**UNITED STATES of America,
Plaintiff–Appellant,**

**v.**

**Ronald LEE, Defendant–Appellee.**

**No. 89–5243.**

United States Court of Appeals,
Fourth Circuit.

Argued March 9, 1990.

Decided June 27, 1990.

William Graham Otis, Sr. Litigation Counsel (argued), Office of U.S. Atty., and Henry E. Hudson, U.S. Atty., Alexandria, Va., and Michael D. Kmetz, Sp. Asst. U.S. Atty. (on brief), Norfolk, Va., for plaintiff-appellant.

Andrew Anthony Protogyrou, Knight, Dudley, Dezern & Clarke, Norfolk, Va., for defendant-appellee.

Before SPROUSE, WILKINSON and WILKINS, Circuit Judges.

PER CURIAM:

The United States appeals from a district court judgment that dismissed with prejudice an indictment charging Ronald Lee, a Jamaican national, with sexually abusing a nine-year-old girl.[1] The molestation with which Lee was charged allegedly occurred at the Guantanamo Naval Base in Guantanamo Bay, Cuba. The government served subpoenas on all defense witnesses and transported them to Norfolk, Virginia, the site of the trial; however, one defense witness failed to appear when the case was called. The district court ruled that it was the government's responsibility to assure

---

1. Lee was indicted under 18 U.S.C. §§ 2241, 2244, 7, and 3238. Sections 2241 and 2244 are the crimes of aggravated sexual abuse and abusive sexual contact, occurring in the special maritime and territorial jurisdiction of the United States. Sections 7 and 3238 govern jurisdiction and venue for crimes committed outside the jurisdiction of a state or district court.

her appearance at trial and therefore dismissed the case with prejudice. We reverse and remand for reinstatement of the indictment.

I

The missing witness was Cathy Shaffer, the 17–year–old daughter of a Marine gunnery sergeant. Lee's court-appointed counsel had interviewed Shaffer when he was flown, at government expense, to Guantanamo Bay to meet potential defense witnesses. The Naval Investigation Service served her with a subpoena in her father's presence. Shaffer and her father were preparing to leave Guantanamo Bay, because he had been permanently reassigned to a California post and was on leave until October 9. On September 22, they boarded a government airplane for Norfolk. Unlike other defense witnesses, who were also subpoenaed with the help of the government and flown to Norfolk at government expense, the Shaffers were not met at the airport by defense counsel.

When the case was called for trial on September 28, Shaffer did not appear. After counsel failed to agree on a stipulation concerning the contents of her putative testimony, Lee's attorney advised the court that Shaffer was an "invaluable" defense witness and that his client felt it would not be possible to conduct a defense without her testimony. The government attorney indicated that Shaffer and her father might be in transit between Norfolk and California. The court told the United States attorney, "Well, you have control of it. Get the woman here." The court continued:

> Well, it seems to me that where I have authorized the tremendous expense, which has been put in this case, for [defense counsel] to go to Cuba to interview witnesses, that the government should have taken more action than it did to make sure that the witnesses got here, particularly in a sensitive case like this, and I'm really upset about it, and the only thing I can tell you is: I'm not going to continue the case. We'll go ahead with the trial, and if you all don't find this witness and get her here in time for

the defendant to use her, I'm going to throw the case out because I'm not going to put the government to all this expense again.

The government attorney and the court then engaged in this colloquy:

> [GOVERNMENT ATTORNEY]: I can look for the—for the girl. I—you know, I can't guarantee that—that we'll be able to find her, nor can I guarantee that I'll (sic) be able to get here by the time the government—the defense puts on their case.

> THE COURT: Either that or you can dismiss the case right now.

> I'll give you your choice.

> [GOVERNMENT ATTORNEY]: Your Honor, can we take a brief recess? About fifteen minutes?

> Let's make a couple of phone calls down to the Marine Barracks in Guantanamo Bay to see whether or not he has left any sort of interim address and phone numbers along the way which, under Navy regulations, he's not required to do. He's got anywhere from 30 to 45 days, on a permanent change of duty station, to report to his next duty station.

> At least let us attempt to find that out and perhaps we can—we can get them on a flight, you know, sometime this afternoon to arrive.

> THE COURT: All right. I'll give you fifteen minutes, and that's all.

The court recessed for lunch, so the government actually had a little over an hour to search for Shaffer. It succeeded in obtaining post office box and phone numbers in Chloride, Arizona, which her father had left with the Marines in Guantanamo Bay as a possible way of contacting him during his leave. The government then asked for a continuance to attempt to locate the witness. The court suggested that it would consider granting an overnight continuance after the attorneys presented their opening statements and the government presented its evidence, with the understanding that the case would be dismissed if Shaffer did not appear the next day. This dialogue followed:

[GOVERNMENT ATTORNEY]: I—I understand that, Your Honor, but by—by putting our case on today certainly is locking the government into a fairly untenable position.

THE COURT: Well, it's your own fault; it's your own fault.

Listen, there are many, many times, since I've been on the bench, where the court has required the government to produce defense witnesses for them when—when the witnesses are military personnel overseas—

[GOVERNMENT ATTORNEY]: Your Honor,—

THE COURT: —and your office up there knows that.

[GOVERNMENT ATTORNEY]: Your Honor, if I might correct the Court, the witness is not a military person. She is a dependent of a military person.

THE COURT: Well, that's the same thing as far as I'm concerned.

[GOVERNMENT ATTORNEY]: She's merely a civilian who was served with a subpoena and chose not to show up.

THE COURT: Yes. But the government can tell her papa, "You have her here."

[GOVERNMENT ATTORNEY]: That was done when—when the subpoena was served, Your Honor.

THE COURT: All right. Well, you know, you should have met them at the airport or have the NIS or somebody meet them at the airport and check them in to make sure they were here.

The court denied the government's request for a continuance, and repeated that it would consider a motion for an overnight continuance of the case after the presentation of the government's evidence. The government attorney responded, "This witness could be anywhere. There's just no way that we're going to be able to track her down overnight." The court invited a motion to dismiss, Lee's attorney so moved, and the court dismissed the case with prejudice.

## II

The government is "under no obligation to look for the [defendant's] witnesses, in the absence of a showing that such witnesses were made unavailable through the suggestion, procurement, or negligence of the" government. *Ferrari v. United States*, 244 F.2d 132, 141 (9th Cir.), *cert. denied*, 355 U.S. 873, 78 S.Ct. 125, 2 L.Ed.2d 78 (1957); *United States v. Ballesteros–Acuna*, 527 F.2d 928, 930 (9th Cir. 1975); *cf. United States v. Edwards*, 366 F.2d 853, 870–71 (2d Cir.1966), *cert. denied*, 386 U.S. 908, 87 S.Ct. 852, 17 L.Ed.2d 782 (1967). Here, the district court found that Shaffer was within government control by virtue of her relation to a member of the military and that the prosecution was negligent in failing to produce her.

■ The question of government control over the families of military personnel who may be stationed abroad is a knotty one. But assuming *arguendo* that the government did exercise some degree of control over Shaffer, we still cannot find the government's conduct in this case negligent. "[T]he lengths to which the prosecution must go to produce a witness ... is a question of reasonableness." *United States v. Rivera*, 859 F.2d 1204, 1208 (4th Cir.1988) (quoting *Ohio v. Roberts*, 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1980)), *cert. denied*, —— U.S. ——, 109 S.Ct. 1743, 104 L.Ed.2d 180 (1989).

In our view, the government's conduct here was reasonable. It appears that the prosecution cooperated in every way with Lee's counsel in developing his defense. The government flew defense counsel to Guantanamo Bay; the government served subpoenas on the witnesses he identified; the government flew those witnesses to Norfolk for the trial. Significantly, with the exception of Shaffer, the defense counsel met all the witnesses when they landed at the Norfolk air base, arranged for their housing, and apparently discussed their required presence at trial. Defense counsel offered no explanation and the trial court made no inquiry as to why it did not treat Shaffer similarly. At the same time, there is no suggestion that the government had any indication that Shaffer would ignore her subpoena. From these circumstances, it seems that equal or perhaps even greater

blame must be placed on defense counsel for the witness's failure to appear.[2]

 In any event, the district court erred in dismissing the indictment because, as the Supreme Court has explained, "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." *United States v. Morrison*, 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981); *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 254, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988); *United States v. Hattrup*, 763 F.2d 376, 378 (9th Cir.1985) (Kennedy, J.) (failure of sole *prosecution* witness to appear not basis for dismissal of indictment, absent showing of prejudice to defendant).

Nothing in the record suggests Lee would have been prejudiced had his case been continued. Indeed, Lee's counsel had obtained a three-day continuance only the week before. The district court was primarily concerned with the saving the public the expense of a trial delay. While concern with controlling the costs of litigation is laudable, it is not in itself a basis for dismissing an indictment.

### III

We conclude that the government's conduct in assisting in Lee's defense and in endeavoring to secure Shaffer's presence for trial was reasonable and that the district court erred in penalizing the prosecution by dismissing the case with prejudice. The case is reversed and remanded with instructions to reinstate the indictment.

REVERSED AND REMANDED WITH INSTRUCTIONS.

---

2. *Compare Singleton v. Lefkowitz*, 583 F.2d 618, 623–27 (2d Cir.1978) (defendant denied sixth amendment right to compulsory process where continuance was denied after subpoenaed witness was released from police custody), *cert. denied*, 440 U.S. 929, 99 S.Ct. 1266, 59 L.Ed.2d 486 (1979).