**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                                          No. 99-4262

COREY DEON GOODSON,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CR-98-216)

Argued: December 1, 1999

Decided: February 11, 2000

Before WILKINSON, Chief Judge, NIEMEYER, Circuit Judge,
and Samuel G. WILSON, Chief United States District Judge
for the Western District of Virginia, sitting by designation.

_____

Reversed and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Chief Judge Wilkinson and Chief Judge Wilson
joined.

_____

**COUNSEL**

**ARGUED:** Vincent L. Gambale, Assistant United States Attorney,
Alexandria, Virginia, for Appellant. Barbara Lynn Hartung, Rich-
mond, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United
States Attorney, Alexandria, Virginia; James B. Comey, Assistant
United States Attorney, Richmond, Virginia, for Appellant.

**OPINION**

NIEMEYER, Circuit Judge:

When Corey Goodson refused to accept a proposed plea agreement on the day of his trial for firearms violations, the government renewed a request made the prior week for a postponement of trial for at least eight days because it had not adequately secured the attendance of crucial witnesses. The district court denied the government's motion for a continuance. Thereafter, when the government made a motion to dismiss the case voluntarily under Federal Rule of Criminal Procedure 48(a) to permit it to start again with a new charging document, the court invited Goodson to make a motion to dismiss, which it then granted. After the government issued a warrant to reprosecute Goodson, the court stated that its prior dismissal had been "with prejudice," denying the government any opportunity to retry Goodson for the alleged violations. On the government's appeal, we reverse the "with prejudice" aspect of the district court's dismissal order.

I

Following a police search of an apartment in Richmond, Virginia, where Corey Goodson was staying, police recovered a firearm and ammunition. Goodson was indicted on July 8, 1998, on five counts relating to possession of an unregistered firearm and ammunition. At arraignment, the court scheduled trial for January 13, 1999. Two days before the scheduled trial date, the United States obtained a superseding indictment against Goodson to correct an error in the allegation of the date of his charged criminal conduct, changing it from April 6, 1998, to February 17, 1998. Other than the change in date, however, the superseding indictment was the same as the original indictment. Because Goodson asserted his right not to be tried sooner than 30 days after the superseding indictment was filed, see 18 U.S.C. § 3161(c)(2), the district court rescheduled trial for February 16, 1999, a date to which the parties agreed.

Approximately two weeks before the scheduled February trial date, government prosecutors learned that one of the government's key witnesses, Henrico County Officer Robert Augustine, would be on a prepaid vacation in Europe on February 16, returning shortly before

February 24, 1999. The government notified Goodson that if he did not agree to a proposed plea agreement by February 5, 1999, the government would have to seek a continuance because of Officer Augustine's absence. At Goodson's request, the government agreed to extend this deadline to February 8 so that Goodson could consult with his mother.

On February 8, Goodson informed the government that he would not accept a plea agreement and intended to go forward with trial. Accordingly, the government requested a continuance from the court because of Officer Augustine's expected absence. When the court denied the motion, the government attempted to contact Officer Augustine, whom it had not subpoenaed, but learned that he had already left the country. On February 12, 1999, the government moved for reconsideration of the court's denial of its motion for a continuance, stating that it could be prepared for trial on February 24, 1999, shortly after Officer Augustine's return from Europe. The court again refused to grant a continuance.

On the morning of February 16, the date set for trial, the government prosecutors learned that the government's other critical witness, Henrico County Officer Evan Young, also would be unable to testify at trial. Although Officer Young had been subpoenaed to attend trial on February 16, he could not appear because he was a member of a SWAT unit that was involved in a standoff with a man who had taken his estranged wife hostage. The government prosecutor also learned on the morning of trial that Goodson had signed the plea agreement and intended to plead guilty when the case was called.

When the case was called and the court entered into a plea colloquy with Goodson, Goodson refused to admit factual guilt or to accept the court's invitation to enter an <u>Alford</u> plea.* He maintained his innocence and stated that he wished to proceed with a bench trial. At that point the government advised the court that because neither Officer Augustine nor Officer Young was available, it could not present its case on that date. Accordingly, the government renewed its motion

_____

*<u>See North Carolina v. Alford</u>, 400 U.S. 25, 37-38 (1970) (permitting a court to accept a guilty plea where there is a factual basis for the plea but the defendant asserts his innocence).

3

for an eight-day continuance. When the court denied the motion, the following colloquy ensued:

> [Prosecutor]: Your Honor, then, it is the United States' position that we will need to dismiss the indictment. And just for the benefit of Mr. Goodson and Mr. Parker[Goodson's attorney], it is our intention to file a criminal complaint this morning with regard to the charges.
>
> The Court: Thank you. You can have a seat. Mr. Parker, do you have a motion?
>
> Mr. Parker: I guess, Your Honor, if the government has a motion to dismiss at this point, Your Honor, I don't think --
>
> The Court: I didn't ask you that. I heard the government's motion. I asked you did you have a motion. Mr. Parker, the government is not prepared to proceed to trial today. Today was the day set for trial. Nobody is dead. Nobody is sick. People are, because of the press of other business, are not here in Court. That is not a sufficient basis for a continuance. Do you have a motion? Represent your client, Mr. Parker.
>
> Mr. Parker: Motion to dismiss, Your Honor.
>
> The Court: Granted. Thank you.

The court then adjourned and entered an order which stated, "The matter was . . . called and the Government was unprepared to proceed. As such, the Court GRANTED the Defendant's Motion to Dismiss. The Indictment in this action is hereby DISMISSED."

A few days later, when the government obtained a warrant for Goodson's arrest for reprosecution of the firearms charges, the court quashed it, ordering that the government not "issue another Warrant of Arrest for Mr. Goodson on these same charges and set of facts."

4

On the government's motion for reconsideration, the court denied the motion, indicating that it had dismissed Goodson's indictment with prejudice. The court noted that the parties had previously agreed on a mutually acceptable date and that the court's "calendar was very congested and trial days were difficult to come by." The court stated that neither Officer Augustine's vacation in Europe nor Officer Young's SWAT team duty was a sufficient basis for a continuance.

This appeal followed.

II

The government contends that the district court erred in not granting its motion to dismiss the indictment under Federal Rule of Criminal Procedure 48(a) because the court made no finding of bad faith and the record was "devoid of any [such] evidence." It contends also that the court erred in granting, with prejudice, Goodson's motion to dismiss the indictment, whether under Federal Rule of Criminal Procedure 48(b) or under its general supervisory power, because Goodson demonstrated no prejudice or substantial threat thereof from the government's proposed delay. The government argues that the court may dismiss an indictment with prejudice "only in extreme circumstances involving prosecutorial misconduct, demonstrable prejudice, and oppressive delay." The government does not challenge the district court's exercise of discretion in denying the government's various motions for a continuance.

Federal Rule of Criminal Procedure 48(a) provides:

> The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.

While the rule confers discretion on the district court to deny the government's motion to dismiss a charging document, this discretion is not broad. See United States v. Perate, 719 F.2d 706, 710 (4th Cir. 1983) ("[T]he trial court has little discretion in considering a govern-

5

ment motion to dismiss made pursuant to [Rule 48(a)]" (internal citations omitted)). Indeed, the court must grant the government's Rule 48(a) motion unless the court concludes that to grant it would be clearly contrary to manifest public interest, determined by whether the prosecutor's motion to dismiss was made in bad faith. See Rinaldi v. United States, 434 U.S. 22, 30 (1977) (per curiam) ("The decision to terminate this prosecution . . . was motivated by considerations which cannot fairly be characterized as `clearly contrary to manifest public interest'" (internal citations omitted)); United States v. Smith, 55 F.3d 157, 159 (4th Cir. 1995) ("The disposition of a government's motion to dismiss an indictment should be decided by determining whether the prosecutor acted in good faith at the time he moved for dismissal. A motion that is not motivated by bad faith is not clearly contrary to manifest public interest, and it must be granted"); Perate, 719 F.2d at 710 (stating that a Rule 48(a) motion must be granted "absent a finding of bad faith or disservice to the public interest").

We review a district court's refusal to grant a prosecutor's motion for dismissal under Rule 48(a) for abuse of discretion. Smith, 55 F.3d at 158; Perate, 719 F.2d at 710. In doing so, we "must carefully scrutinize the district court's action." Smith , 55 F.3d at 158. This is so because the discretion granted by Rule 48(a) implicates the constitutional doctrine of separation of powers. See id .; United States v. Cowan, 524 F.2d 504, 513 (5th Cir. 1975). As then-Judge Warren Burger wrote, "Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or . . . whether to dismiss a proceeding once brought." Newman v. United States, 382 F.2d 479, 480 (D.C. Cir. 1967).

In this case, the district court concluded that the United States failed to meet its responsibility to meet the court's schedule by securing the presence of witnesses. As a consequence of this failure, when the case was called, the district court determined that "the government was unprepared to proceed." The court did not, however, find that the government had acted in bad faith, nor does the record indicate a basis for such a finding. Accordingly, we conclude that the district court abused its discretion in turning aside the government's Rule 48(a) motion and inviting a motion to dismiss from the defendant,

6

presumably to be made under either Rule 48(b) or the court's general supervisory power, although the court did not specify which.

III

While the government understandably has no objection to the district court's dismissal of the indictment, whether under Rule 48(b) or under the court's supervisory power -- indeed, the government had filed its own motion to dismiss under Rule 48(a)-- it objects to dismissal with prejudice. It argues that the district court did not find the circumstances required to justify a dismissal with prejudice and that the record would not, in any event, support such a finding.

Although the district court did not explicitly identify the authority on which it relied for its ruling, either Rule 48(b) or the court's supervisory power could have provided a basis for the court's dismissal, and the line of demarcation between the two sources of authority is not clearly defined. See, e.g., United States v. Simmons, 536 F.2d 827, 832 (9th Cir. 1976) (Rule 48(b) authority "is derived from the court's supervisory authority in regard to its own jurisdiction"). Federal Rule of Criminal Procedure 48(b) provides:

> If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.

This provision not only allows a court to dismiss an indictment on constitutional grounds, see Pollard v. United States, 352 U.S. 354, 361 n.7 (1957) (noting that Rule 48(b) provides for enforcement of the Sixth Amendment's speedy-trial right), but it also restates the court's inherent power to dismiss an indictment for lack of prosecution where the delay is not of a constitutional magnitude, see Fed. R. Crim. P. 48(b) advisory committee note (pointing out that the rule restates the "inherent power of the court to dismiss a case for want of prosecution"). See also United States v. Balochi, 527 F.2d 562, 563-64 (4th Cir. 1976) (per curiam) (Rule 48(b)"supplements the district court's obligation to dismiss indictments in order to protect a defendant's constitutional rights, and it is broader in compass").

7

If made under Rule 48(b), Goodson's motion would appear to rest on the government's failure to prosecute without unnecessary delay because the government appeared for trial unprepared-- what Rule 48(b)'s advisory committee note refers to as a "want of prosecution." See Fed. R. Crim. P. 48(b) advisory committee note; United States v. Hattrup, 763 F.2d 376 (9th Cir. 1985) (applying Rule 48(b) where delay was due to failure of prosecution's sole witness to appear); United States v. Correia, 531 F.2d 1095, 1099 (1st Cir. 1976) (applying Rule 48(b) where case had been called for trial, motion for continuance was denied, and government was not ready to proceed). Goodson made the motion in response to the court's suggestion and its observation that "the government is not prepared to proceed to trial today. Today was the day set for trial. Nobody is dead. Nobody is sick. People are, because of the press of other business, are not here in Court."

If the district court's dismissal was not premised on the "unnecessary delay" that may justify dismissal under Rule 48(b), the court may have been relying on its general supervisory power to administer its docket and preserve the integrity of the judicial process. A court's supervisory power authorizes it to "formulate procedural rules not specifically required by the Constitution or by Congress." United States v. Hasting, 461 U.S. 499, 505 (1983) (recognizing use of the power to discipline a prosecutor); see also United States v. Lee, 906 F.2d 117, 119 (4th Cir. 1990) (per curiam) (involving dismissal of a case without specifying source of authority because prosecutor failed to procure the attendance of a witness). While it is not altogether clear that attorney discipline was an object of the district court's action, the court did justifiably express frustration with the prosecutor's effort to manipulate its calendar, noting that its calendar was "very congested" and that trial dates were "difficult to come by."

Under both Rule 48(b) and its supervisory power, a district court has broad discretion to manage its docket and to impose a wide range of sanctions against parties who violate the court's scheduling orders. The sanction of dismissal with prejudice, however, is a harsh remedy for enforcement of those powers, and, indeed, its use becomes a significant event. For in dismissing an indictment with prejudice, the court allows its interest in the orderly administration of justice to override the interests of victims and the public interest in the enforce-

8

ment of the criminal law. See United States v. Derrick, 163 F.3d 799, 807 (4th Cir. 1998) ("The dismissal of an indictment altogether clearly thwarts the public's interest in the enforcement of its criminal laws in an even more profound and lasting way than the requirement of a retrial"); Hattrup, 763 F.2d at 378 (referring to the "harsh remedy of dismissal with prejudice"). Accordingly, to reconcile these competing interests, it is established that a district court may not, in the management of its docket, exercise its discretion to dismiss an indictment with prejudice, either under Rule 48(b) or under its supervisory power, unless the violation caused prejudice to the defendant or posed a substantial threat thereof. See Derrick, 163 F.3d at 806 (noting that dismissal of an indictment with prejudice "without a finding of prejudice is directly contrary not only to the precedent of this court, but also to clear and well-established Supreme Court precedent"); Lee, 906 F.2d at 120 (holding that "'absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate'" (quoting United States v. Morrison, 449 U.S. 361, 365 (1981))); Hattrup, 763 F.2d at 378 (holding that the failure of the government's sole witness to appear for trial, when the witness had not been subpoenaed, did not warrant dismissal with prejudice under Rule 48(b) absent "prosecutorial misconduct and demonstrable prejudice or substantial threat thereof"); see also Hasting, 461 U.S. at 505-09 (holding that an appellate court's supervisory power to dismiss could not be exercised to discipline prosecutorial misconduct where misconduct was harmless).

In Lee, the district court denied the government's request for a continuance to procure a missing defense witness for whose absence it was allegedly responsible. After inviting the defense to make a motion to dismiss, the district court dismissed the indictment with prejudice, without identifying which power it was exercising and without finding that the defendant was prejudiced by the delay. We reversed, finding that the defendant would not be prejudiced by a continuance of the case. We observed that the defendant's failure to show prejudice, or a substantial threat of prejudice, rendered dismissal of the indictment "plainly inappropriate." Lee, 906 F.2d at 120.

Similarly, in Hattrup, then-Judge Anthony Kennedy held that the failure of the government's sole witness, who had not been subpoenaed, to appear for trial did not warrant dismissal of the indictment

with prejudice under Rule 48(b) absent "prosecutorial misconduct and demonstrable prejudice or substantial threat thereof." Hattrup, 763 F.2d at 378.

The same principles apply to the court's exercise of its supervisory authority to sanction prosecutorial misconduct. In Hasting, the Court held that an appellate court could not exercise its supervisory power to discipline prosecutorial misconduct by reversing a conviction where the alleged misconduct was harmless. 461 U.S. at 505-09; see also Bank of Nova Scotia v. United States, 487 U.S. 250, 263 (1988) (holding that a district court has "no authority to dismiss the indictment [with prejudice] on the basis of prosecutorial misconduct absent a finding that [the] petitioners were prejudiced by such misconduct"); Derrick, 163 F.3d at 806 (same).

In holding that there must be a showing of prejudice to the defendant or a substantial threat thereof before a court may dismiss an indictment with prejudice for unnecessary delay either under Rule 48(b) or under its supervisory power, we do not disturb the settled analysis for determining whether an indictment must be dismissed for violation of the Sixth Amendment right to a speedy trial. See Barker v. Wingo, 407 U.S. 514, 530 (1972). Nor does our holding alter the more relaxed requirements for dismissals of an indictment without prejudice.

With these principles in hand, we now turn to the circumstances before us. In granting Goodson's motion for dismissal with prejudice, the district court never addressed whether Goodson would be prejudiced by a denial of his motion to dismiss. The court apparently reacted only to the prosecution's failure to observe the court-scheduled trial date, its negligence in securing the attendance of witnesses, and its indication that it intended to dismiss the case under Rule 48(a) in order to reprosecute Goodson, which would require a new trial date. The trial, first scheduled on January 13, 1999, was continued because the government reindicted Goodson to correct an error in the indictment and Goodson elected to have an additional 30 days to respond to the superseding indictment. A trial was rescheduled for February 16, 1999, a little over one month later. The continuance requested repeatedly by the government on February 16, 1999, and earlier, would have required a third trial date. In short, the court's dis-

10

missal appears to have been an understandable effort to enforce its scheduling orders and to discipline the prosecutors for their failure to comply with them.

Even though the district court did not identify any prejudice to Goodson that might have been caused by the government's requested delay to restart Goodson's prosecution, and Goodson claimed no such prejudice, we must still determine whether the record supports a finding of the prejudice that Goodson now claims from the "unnecessary delay in bringing [him] to trial." Fed. R. Crim. P. 48(b). While the record might support a conclusion that the government was negligent -- Goodson contends that the government's conduct was both negligent and in bad faith -- the record does not support a claim that the requested delay would have violated any speedy trial right, constitutional or statutory, or that it would have prejudiced in any way his ability to present his defense. To show prejudice, he argues only that he remained incarcerated "throughout these proceedings."

The prohibition in our criminal justice system against unnecessary delay is designed (1) to protect against "undue and oppressive incarceration prior to trial," (2) to "minimize anxiety and concern accompanying public accusation," and (3) to protect the "ability of an accused to defend himself." Smith v. Hooey , 393 U.S. 374, 378 (1969) (quoting United States v. Ewell, 383 U.S. 116, 120 (1966)). The record does not provide any evidence implicating the values underlying the second and third objectives. See United States v. Grimmond, 137 F.3d 823, 829-30 (4th Cir. 1998) (concluding that prejudice not shown where there was no indication that, as a result of the delay, any witness would be unavailable or unable accurately to recall the events in question or that any exculpatory evidence would be lost or unavailable); United States v. Shepherd, 511 F.2d 119, 123 (5th Cir. 1975) (recognizing that prejudice from anxiety requires "more than the normal anxiety that accompanies a trial"). While Goodson does claim that he would have been incarcerated for the period of any further postponement, the duration of this period would not be more than a month or so, which does not constitute the "oppressive incarceration" against which speedy trial requirements were designed to protect. See Barker, 407 U.S. at 534 (finding that prejudice from ten months in jail before trial was minimal).

11

Because Goodson would have suffered no demonstrable prejudice or threat of prejudice from the requested continuance, and because the district court found none, the district court's dismissal with prejudice constituted an abuse of discretion. As both Goodson and the government requested a dismissal, it is only the "with prejudice" aspect of the district court's order that is at issue. Accordingly, we reverse the district court's order dismissing the indictment with prejudice and remand with instructions to modify the order to dismiss without prejudice.

REVERSED AND REMANDED WITH INSTRUCTIONS

12