# GOVERNMENT OF THE VIRGIN ISLANDS, Appellant
## v.
# DEBORAH LEE CASTILLO, Appellee

D.C. Criminal App. No. 2005-90

District Court of the Virgin Islands

Division of St. Thomas and St. John, Appellate Division

August 15, 2008

DEBRA SMITH-WATLINGTON, ATPD, St. Thomas, USVI, *For the appellant.*

MAUREEN PHELAN, AAG, St. Thomas, USVI, *For the appellee.*

GÓMEZ, *Chief Judge of the District Court of the Virgin Islands*; FINCH, *Judge of the District Court of the Virgin Islands*; and BRADY, *Judge of the Superior Court of the Virgin Islands, Division of St. Croix, sitting by designation.*

## MEMORANDUM OPINION

### (August 15, 2008)

The people of the Virgin Islands (the "government") appeal from an order of Superior Court of the Virgin Islands, Division of St. Thomas and St. John (the "Superior Court"),[1] denying the government's motion for reconsideration of the dismissal of the criminal charges against Deborah Lee Castillo ("Castillo").

## I. FACTS

Violet Armour ("Armour"), Castillo's mother, was formerly employed by ABC Sales & Services ("ABC") in St. Thomas, U.S. Virgin Islands. From April 12, 2001, through January 15, 2002, Armour purportedly forged the signature of John Strain ("Strain"), the owner of ABC, on thirty-five checks, totaling $131,297.25. Armour then deposited, cashed, or signed the checks over to family and friends. Two such checks were made out to Castillo. The first check was for the amount of $2,500, which was deposited into the joint account of Castillo and Armour. The second check, for $3,000, was deposited in an account held by Castillo alone.

On May 7, 2005, Castillo was arrested in connection with her participation in her mother's alleged forgery of ABC company checks. On

---

[1] Prior to 2005, the trial court was known as the Territorial Court of the Virgin Islands and its judges were referred to as Territorial Court Judges. Effective January 1, 2005, however, the name of the Territorial Court changed to Superior Court of the Virgin Islands. *See* Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004). Recognizing this renaming, this Court employs the terms Superior Court and Superior Court Judge.

May 18, 2005, the government filed a thirty-seven count information against Castillo and Armour. Counts One through Twenty-Eight charge Armour with forging Strain's signature on checks belonging to ABC. Counts Twenty-Nine through Thirty-One, respectively, charge Armour with embezzlement by clerks, agents, and employees; obtaining money by false pretenses; and grand larceny; all in connection with her scheme to force ABC company checks. Counts Thirty-Two and Thirty-Three charge Castillo with aiding Armour in forging Strain's signature on checks belonging to ABC. Counts Thirty-Four and Thirty-Five charge Castillo with aiding and abetting Armour in obtaining money by fake pretenses by forging checks, and depositing them into accounts held jointly by Castillo and Armour, or by Castillo alone. Counts Thirty-Six and Thirty-Seven charged Castillo with aiding Armour in committing grand larceny by stealing from the checking account of ABC. Castillo initially entered a plea of not guilty to the charges filed in the information.

On August 18, 2005, the government offered Castillo a plea agreement. The government proposed that Castillo would plead guilty to Counts One and Two of an amended information, both of which charged misdemeanor obtaining money by fake pretenses, as well as pay restitution to ABC in the amount of $30,000. In exchange, the government would recommend consecutive prison sentences of one year for each count, credit for time served, and the balance of the prison term suspended, along with the agreed upon restitution. The government stated that, upon receipt of an executed plea agreement from Castillo, it would file a motion to amend the information to reflect the charges referenced in the plea agreement. On August 22, 2005, Castillo accepted the plea offer and executed the plea agreement. Also on August 22, 2005, Castillo requested that the Superior Court conduct a hearing to enter a change of plea in this matter.

On September 2, 2005, the government filed a motion to amend the information, pursuant to and contingent upon the plea agreement. Attached to the motion to amend was a copy of the proposed amended information. Count One of the proposed amended information charged Castillo with aiding and abetting Armour in obtaining money by fake pretenses by receiving or depositing fraudulently made checks belonging to ABC, in violation of title 14, section 834(1) of the Virgin Islands Code ("Section 834(1)"). Counts Two through Five charged Kendra Vicars ("Vicars") with obtaining money by fake pretenses by endorsing and

cashing checks from Lutheran Social Services, for child care services that Vicars did not provide, also in violation of Section 834(1).

On September 7, 2005, the Superior Court scheduled a hearing on Castillo's request for a change of plea. The hearing proceeded as follows:

THE CLERK: Jury Calendar for Wednesday, September 7, 2005. Number One, the Government of the Virgin Islands vs. Deborah Lee Castillo.

ATTORNEY LEYCOCK: Good morning, Your Honor. Robert Leycock on behalf of Ms. Castillo, who is in Lock-Up.

THE COURT: Good morning. We're here for a change of plea hearing. Who is the attorney for the People of the Virgin Islands? Do you know?

ATTORNEY LEYCOCK: Attorney Denise Counts.

THE COURT: This matter was set for 10 O'clock. What time is it?

ATTORNEY LEYCOCK: Ten, ten Your Honor.

THE COURT: Please stand, Ms. Castillo.

**[Ms. Castillo complied]**

Good morning.

MS. CASTILLO: Good morning.

THE COURT: There was a change of plea hearing set for 10 O'clock. I don't see anybody representing the People. I guess they're no longer interested, so I'll dismiss this case against you with prejudice.

ATTORNEY LEYCOCK: Thank you.

THE COURT: It means it cannot be brought against you again.

MS. CASTILLO: Thank you.

THE COURT: Very well. You're excused. It means that Ms. Castillo should be released forthwith.

(Hr'g Tr. 2-3, Sept. 7, 2005.)[2]

Also on September 7, 2005, the government filed a motion for reconsideration of the dismissal of the charges against Castillo.

In an order dated September 9, 2005, the Superior Court memorialized its September 7, 2005, verbal order dismissing the matter against Castillo.

---

[2] The above quotation comprises the entire transcript of the September 7, 2005, proceeding.

The September 9, 2005, order stated that the charges against Castillo were dismissed with prejudice, and Castillo's bond, if any, was exonerated.

On September 27, 2005, the government filed an amended motion for reconsideration, accompanied by an affidavit of the prosecutor assigned to the case setting forth the facts described in the motion. The amended motion for reconsideration stated that the prosecutor was not present at the September 7, 2005, hearing because she was off island at the time, on a two-week annual/medical leave. The government explained that, before leaving the Territory, the prosecutor had arranged for a different government attorney to cover the September 7, 2005, hearing. However, the government claimed that, due to inadvertence and mis-communication, no attorney appeared for the government at the September 7, 2005, hearing. In the reconsideration motion, the government further argued that no prejudice was caused to Castillo, as she had already signed a plea agreement at the time of the September 7, 2005, hearing.

In an order entered on October 5, 2005, the Superior Court denied the government's motion for reconsideration.[3] The October 5, 2005, order stated:

> This matter came on for a change-of-plea hearing on September 7, 2005. The Assistant Attorney General assigned to the case failed to appear. Although there was at least one other Assistant Attorney General present, he informed the Court that the matter had not been as-signed to him. This matter was dismissed for failure to prosecute.

(Order 1, Oct. 5, 2004.)

In response to the government's argument that Castillo was not prejudiced by the absence of the prosecutor at the change of plea hearing, the court stated:

> The Plea Agreement to which the People refer was flawed at best. Defendant would not have been in a position to plead to any Counts in the Amended Information as all but one count named someone other than the Defendant. The first Count which named the Defendant incorrectly

[3] The October 5, 2005, order referred to both the original, and amended motion for reconsideration.

charged a felony instead of a misdemeanor as agreed to by the Parties. Moreover, Defendant has since departed the jurisdiction.

(*Id.*)

On October 6, 2005, the government filed a notice of appeal from the September 9, 2005, dismissal order. At issue is whether the Superior Court abused its discretion by dismissing the charges against Castillo with prejudice for failure to prosecute.

## II. JURISDICTION

This Court has jurisdiction to review an order of the trial court dismissing a prosecution in favor of the defendant, except where there is an acquittal on the merits. *See* Revised Organic Act of 1954 23A, 48 U.S.C. § 1613a;[4] Act No. 6730 § 54(d)(1) (Omnibus Justice Act of 2005);[5] *see also Gov't of the V.I. v. Lee*, 775 F.2d 514 (3d Cir. 1985).

## III. STANDARD OF REVIEW

We review the trial court's dismissal of criminal charges for failure to prosecute for abuse of discretion. *See Gov't of the V.I. v. Fraser*, 45 V.I. 461, 465 (D.V.I. App. Div. 2004) (citing *Lee*, 775 F.2d at 526); *United States v. DeLeo*, 422 F.2d 487, 495 (1st Cir. 1970); *United States v. Lane*, 561 F.2d 1075 (2d Cir. 1977)). The trial court's decision to dismiss a prosecution with or without prejudice is also reviewed for an abuse of discretion. *See Gov't of the V.I. v. Allick*, 48 V.I. 503, 507 (D.V.I. App. Div. 2006) (citing *United States v. Giambrone*, 920 F.2d 176, 180-82 (2d Cir. 1990)).

Trial court's factual findings, including its finding of actual prejudice, are reviewed for clear error, "but in applying that standard, we must keep the defendant's heavy burden in mind." *United States v. Jiang*, 214 F.3d 1099, 1103 (9th Cir. 2000) (internal quotation marks and citations omitted); *see also Allick*, 48 V.I. at 507. Questions of law are subject to plenary review. *See Poleon v. Gov't of the V.I.*, 184 F. Supp. 2d 428 (D.V.I. App. Div. 2002); *Bigby v. Gov't of the V.I.*, 125 F. Supp. 2d 709, 712 (D.V.I. App. Div. 2000).

---

[4] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2003), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

[5] That authority was formerly provided in title, section 39(c) of the Virgin Islands Code.

## IV. ANALYSIS

The government argues that the prosecutor's failure to appear at the September 7, 2005, change of plea hearing did not warrant dismissal of the charges against Castillo with prejudice. It contends that such dismissal was inappropriate under Federal Rules of Criminal Procedure 48(b) ("Rule 48(b)").

■ The relevant portion of Rule 48 provides:

> The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in:
>
> . . .
>
> [ ] bringing a defendant to trial.

FED. R. CRIM. P. 48(b) (2002).[6] Rule 48(b) permits dismissal for violations of the defendant's Sixth Amendment right to a speedy trial. *See Pollard v. United States*, 352 U.S. 354, 361, 77 S. Ct. 481, 1 L. Ed. 2d 393 (1957) (noting that Rule 48(b) provides for the enforcement of the Sixth Amendment speedy trial right).

■ Rule 48 "also restates the court's inherent power to dismiss an indictment for lack of prosecution where the delay is not of a constitutional magnitude." *United States v. Goodson*, 204 F.3d 508, 513 (4th Cir. 2000); *see also* FED. R. CRIM. P. 48(b) Advisory Committee Note ("This rule is a restatement of the inherent power of the court to dismiss a case for want of prosecution."); *United States v. Dreyer*, 533 F.2d 112 (3d Cir. 1976) (noting that Rule 48 is "a restatement of the court's inherent power to dismiss a case simply for want of prosecution").[7] As

---

[6] Rule 48 applies to the Superior Court by Superior Court Rule 7. *See* SUPER. CT. R. 7 (1994) ("The practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by the . . . Federal Rules of Criminal Procedure . . . ."); *see also Fraser*, 45 V.I. at 465 n. 7 (finding that Rule 48 is not inconsistent with the Rules of the Superior Court, specifically, Superior Court Rule 131).

[7] As the First Circuit explained in *United States v. Correia*, 531 F.2d 1095, 1099-10 (1st Cir. 1976):

> In 1970, the Advisory Committee on Criminal Rules of the Judicial Conference of the United States proposed an amendment to [Rule] 48(b) which would have recognized " 'a power in the court to dismiss a prosecution when to do so ' (would) serve the ends of justice and the effective administration of the court's business." 48 F.R.D. 547, 640

such, courts have applied Rule 48(b) to cases involving a failure to prosecute without unnecessary delay. *See, e.g., Goodson*, 204 F.3d at 513-14 (explaining that Rule 48(b) may provide a basis for dismissal absent unnecessary delay); *United States v. Hattrup*, 763 F.2d 376 (9th Cir. 1985) (applying Rule 48(b) where the case was dismissed because the prosecution's only witness did not appear); *United States v. Correia*, 531 F.2d 1095, 1099-10 (1st Cir. 1976) ("As the case had been called for trial, a continuance denied, and the government had professed its unreadiness to proceed to trial, we conclude that there was a sufficient showing of want of prosecution to support a dismissal under Rule 48(b).").

■ A court's general supervisory powers afford "broad discretion to manage its docket and to impose a wide range of sanctions against parties who violate the court's scheduling orders." *Goodson*, 204 F.3d at 514; *see also United States v. Hasting*, 461 U.S. 499, 505, 103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983) (describing the general supervisory powers of courts); *Gov't of the V.I. v. Fahie*, 419 F.3d 249, 258 (3d Cir. 2005) ("The purposes underlying the use of courts' supervisory powers are broad . . . ."). A court may, in its discretion, dismiss a criminal case pursuant to its inherent supervisory powers. *See Goodson*, 204 F.3d at 513 (acknowledging that the court's supervisory powers could arguably have provided a basis for dismissal of a criminal case); *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991) ("[D]ismissal of an indictment because of outrageous government conduct may be predicated on alternative grounds: a violation of due process or the court's supervisory powers.").

■■ Rule 48(b), Rule 131, or the court's general supervisory powers may provide authority for the Superior Court to dismiss a criminal matter where such a sanction is warranted. Before dismissing a case under Rule 48(b) for unnecessary delay, courts consider: the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice

---

(1970). This proposal was not submitted to Congress nor enacted in the subsequent Federal Rules of Criminal Procedure Amendments Act of 1975, P.L. 94-64, 89 Stat. 370. While the rule would have specifically authorized the action taken in this case, it would have also authorized the courts to dismiss criminal cases for a broad range of policy reasons. Therefore, the proposed amendment's failure to gain approval does not negate the district court's authority to dismiss this case, under the circumstances related above, for want of prosecution under existing Rule 48(b).

*Correia*, 531 F.2d at 1100 n. 6.

to the defendant. *See Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101, (1972) (isolating factors for consideration before dismissal in the speedy trial context). Adopting that inquiry to the failure to prosecute context, it is appropriate to consider: the nature of the government's failure, the reason for the failure, the defendant's assertion of her right, and prejudice to the defendant. *Cf. Allick*, 48 V.I. at 507 (analyzing the factors outlined in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)).

■ The nature of the government's failure to prosecute must be considered in light of the particular facts and circumstances of each case. *See Correia*, 531 F.2d at 1100 (analyzing the particular facts and circumstances of the case, including the context of the government's failure to prosecute, to determine whether dismissal is appropriate under Rule 48(b)); *cf. Wells v. Petsock*, 941 F.2d 253, 257-59 (3d Cir. 1991) (explaining the fact-specific nature of the inquiry and noting that longer delays are permitted, without prejudicial effect, when the crime is very serious or complex).

■■ In considering the reason for the government's default or delay,

> different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531. Consequently, dismissal may be appropriate in circumstances involving deliberate misconduct by the government. *See United States v. Balochi*, 527 F.2d 562, 563 (4th Cir. 1976) (affirming dismissal under Rule 48(b) and the court's supervisory powers "in the context of a case . . . in which the uncontroverted affidavit of the defendant's counsel established an unacceptable ambivalence on the part of the government if not an actual misrepresentation to the court"); *see also Allick*, 48 V.I. at 508 ("Where . . . the delay result[s] . . . from the government's deliberate misconduct in delaying the matter, dismissal is appropriate under Rule 48."). On the other hand, mere negligence on the part of the government is generally

insufficient grounds for dismissal. *See Petsock*, 941 F.2d at 258 (holding that dismissal was inappropriate under Rule 48(b) because "there [wa]s no evidence that the Commonwealth made a deliberate attempt to delay the trial in order to hamper the defense, nor evidence of any improper motive" (internal citation and quotations omitted)).

■ It is the defendant's responsibility to assert her right to dismissal. This factor is significant because "the more serious the deprivation, the more likely a defendant is to complain." *Barker*, 407 U.S. at 531. Therefore, the defendant's assertion of her right "is entitled to strong evidentiary weight." *Id.* at 531-32.

■ The prejudice inquiry centers on actual prejudice to the defendant caused by the government's conduct. *See Allick*, 48 V.I. at 510 ("[A]ctual prejudice to a defendant is the touchstone inquiry for determining whether delay warrants dismissal."). "More particularly, absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." *United States v. Morrison*, 449 U.S. 361, 365, 101 S. Ct. 665, 66 L. Ed. 2d 564 (1981) (explaining that dismissal is inappropriate based on Fifth and Sixth Amendment violations absent demonstrable prejudice); *see also Allick*, 48 V.I. at 510 (explaining that, in determining whether dismissal is appropriate due to unnecessary delay, the inquiry "centers primarily on whether a defendant's ability to present a defense at trial has been impaired by the delay, the defendant's lengthy and oppressive pretrial incarceration coupled with the anxiety and concern suffered as a result of a public accusation of crime").

■ Furthermore, even where dismissal is appropriate based on a consideration of the above factors, it does not follow that dismissal *with prejudice* is also proper.

> The sanction of dismissal *with prejudice* . . . is a harsh remedy for enforcement of those powers, and, indeed, its use becomes a significant event. For in dismissing an indictment with prejudice, the court allows its interest in the orderly administration of justice to override the interests of victims and the public interest in the enforcement of the criminal law.

*Goodson*, 204 F.3d at 508 (emphasis in original). The analysis of whether dismissal with prejudice is warranted "compels consideration of society's

interest in bringing the particular accused to trial." *Allick*, 48 V.I. at 509. "The graver the crimes, the greater the insult to societal interests if the charges are dropped, once and for all, without a meaningful determination of guilt or innocence." *United States v. Hastings*, 847 F.2d 920, 924 (1st Cir. 1988).

> Accordingly, to reconcile these competing interests, it is established that a district court may not, in the management of its docket, exercise its discretion to dismiss an indictment with prejudice, either under Rule 48(b) or under its supervisory power, unless the violation caused prejudice to the defendant or posed a substantial threat thereof.

*Goodson*, 204 F.3d at 514.

Here, the dismissal of the information against Castillo was for failure to prosecute, premised upon the failure of the Assistant Attorney General assigned to the matter to appear at the September 7, 2005, change of plea hearing. The trial judge never indicated, nor has Castillo argued, that this case involved any unnecessary delay. Although the government gave no reason for its default at the time of dismissal, it subsequently explained that the default was due to inadvertence and misunderstanding.

Even if the government's failure to secure a substitute prosecutor to cover Castillo's change of plea hearing was negligent, there is absolutely nothing in the record to suggest that the government acted deliberately or in bad faith such as to warrant dismissal. *See, e.g.*, *Gov't of the V.I. v. Allick*, 48 V.I. 503, 510 (D.V.I. App. Div. 2006) (holding that the government's attempt to use impermissible evidence did not amount to prejudice to the defendant warranting dismissal, and that the appropriate remedy would have been to bar the use of such evidence at trial); *Gov't of the V.I. v. Fraser*, 45 V.I. 461, 466 (D.V.I. App. Div. 2004) ("The reason for the delay in this case was the unexpected illness of two witnesses. . . . At worst, the government's conduct was negligent so dismissal is not required, especially not dismissal with prejudice.").[8]

Significantly, Castillo never asserted her right to dismissal. Rather, the trial judge dismissed the matter *sua sponte*.

---

[8] Castillo argues that the government exhibited bad faith in arresting her and transporting her from Florida to the Virgin Islands. However, even if Castillo's allegations against the government in this respect were valid, they have nothing to do with any bad faith on the part of the government in failing to appear at the September 7, 2005, hearing.

Castillo argues that, had the prosecutor appeared at the hearing and the court accepted her plea agreement, she would have been released from pretrial detention pursuant to the terms of the plea agreement. Castillo claims that she would have suffered prejudice from her continued detention had the trial judge not dismissed the charges against her.

However, Castillo's arguments regarding prejudice assume too much. Castillo had no rights under the proposed plea agreement, as it had not yet been accepted by the Superior Court. *See Mabry v. Johnson*, 467 U.S. 504, 507, 104 S. Ct. 2543, 81 L. Ed. 2d 437 (1984) ("A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest."). It is also doubtful that the Superior Court would have accepted the plea agreement, given the reservations about the proposed amended information expressed in the October 5, 2005, order.

Moreover, while Castillo was entitled to a trial, she had no right to a plea bargain. *See Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977) ("[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial."). Even if the prosecutor's absence deprived Castillo of the opportunity to enter a plea agreement altogether, such deprivation would not have prejudiced Castillo, as she was not entitled to a plea bargain in the first instance. *See, e.g., United States v. Rodriguez-Duran*, 507 F.3d 749, 766 (1st Cir. 2007) (holding that the inability of the defendants to complete plea negotiations prior to trial did not constitute substantial prejudice to the defendants because, *inter alia,* the "[d]efendants had no 'right' to negotiate a plea"); *see also Weatherford*, 429 U.S. at 561 ("It is a novel argument that constitutional rights are infringed by trying the defendant rather than accepting his plea of guilty.").

Additionally, although Castillo had agreed to plead guilty to misdemeanor charges, she was arrested and charged with serious felony offenses.

This Court is deeply troubled by the conduct of the government in failing to ensure that a substitute prosecutor appeared at the September 7, 2005, hearing. Although the transcript of the hearing does not indicate that there was any other government attorney present at the hearing, the trial court's October 5, 2005, order explained that another prosecutor was present, but indicated that he had not been assigned to Castillo's case. For

578

another Assistant Attorney General present at the hearing to sit back and watch as the judge dismissed the matter with prejudice was unprofessional and borderline incompetent. The government has offered no explanation, nor can the Court conceive of any reason, for the failure of the prosecutor who was present at the hearing to volunteer to stand in for his absent colleague. The behavior of the government in this matter was inexcusable.

 While the trial judge was understandably frustrated by the government's failure to appear, such frustration was not grounds for her actions. It was wholly inappropriate for the trial judge to dismiss the matter for failure to prosecute when another prosecutor was, in fact, present at the September 7, 2005, hearing. The proper remedy would have been to compel the other Assistant Attorney General to handle Castillo's change of plea hearing, whether or not the matter was assigned to him.

Alternatively, the judge could have continued the hearing, or set the matter for trial. At the time of the September 7, 2005, hearing, Castillo had spent four months in pretrial detention. Castillo's continued detention pending a re-scheduled change of plea hearing, or pending a trial on the merits would not have resulted in prejudice warranting dismissal of the charges against her. *See, e.g., Wells v. Petsock*, 941 F.2d 253, 257 (3d Cir. 1991) ("A pretrial incarceration of seven months, although harmful from the perspective of the accused, does not by itself compel a finding that the defendant was prejudiced.").

Finally, even if Castillo had shown prejudice due to the prosecutor's failure to appear at the September 7, 2005, hearing, it could have easily been remedied by a dismissal without prejudice. *See, e.g., United States v. Yuan Qing Jiang*, 214 F.3d 1099, 1103 (9th Cir. 2000) ("[T]o the extent that the district court was concerned about violations of the [Speedy Trial] Act, its concerns could have been assuaged by the less severe sanction of dismissal without prejudice."); *see also Fraser*, 45 V.I. at 467 ("[D]ismissal with prejudice is a serious remedy to be used sparingly by the courts.").

Accordingly, this Court finds that the Superior Court abused its discretion in dismissing the information against Castillo with prejudice. *See, e.g., Gov't of the V.I. v. Bryan*, 818 F.2d 1069, 1077 (3d Cir. 1987) ("[T]he district court abused its discretion in dismissing with prejudice the information against Bryan because the court failed to engage in an on the record balancing of the factors which must be considered before an

information or indictment is dismissed with prejudice."); *Allick*, 48 V.I. at 512 ("Given the seriousness of the offenses, the brief delay sought by the government, the absence of any actual prejudice to the appellees' ability to have a fair trial, and the less severe remedy of dismissal without prejudice which was available to the trial court, we find the trial court abused its discretion in ordering a dismissal with prejudice.").

## V. CONCLUSION

For the foregoing reasons, the Court will reverse the Superior Court's September 9, 2005, dismissal order. The matter will be remanded for further proceedings consistent with this Memorandum Opinion. An appropriate Order follows.