**Richard K. WELLS, K–2894, Appellant,**

v.

**George PETSOCK, Superintendent.**

**No. 90–3199.**

United States Court of Appeals,
Third Circuit.

Submitted Under Rule 12(6) July 9, 1991.

Decided Aug. 16, 1991.

254

Thomas S. White, Acting Federal Public Defender, Pittsburgh, Pa., for appellant.

Before STAPLETON, COWEN, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal from a denial of a habeas corpus petition raises the question whether violation of a state's statutorily defined deadline to ensure a prompt trial constitutes a deprivation of the defendant's constitutional right to either a speedy trial or effective assistance of counsel. The petitioner's murder trial commenced 217 days after his arrest, 37 days beyond Pennsylvania's 180–day limit. The defendant did not perfect an appeal but filed post-trial motions which were denied. The trial court,[1] on reviewing a post-conviction motion, reversed the petitioner's conviction concluding that his constitutional right to a speedy trial was violated.

The Commonwealth took an appeal and the superior court remanded for another evidentiary hearing, after which the trial court again found that the petitioner's constitutional right to a speedy trial was infringed and ordered his release. The superior court affirmed this order and the Commonwealth appealed. The Pennsylvania

---

1. On motion of the petitioner Wells, the trial judge recused himself from hearing the post-conviction petitions for relief and they were assigned to Judge Harold B. Fink, President Judge of the 55th Judicial District for disposition.

Supreme Court reversed, holding that the petitioner's counsel was not ineffective by agreeing to the continuance of his client's trial date and, thus, the petitioner's right to a speedy trial was not violated.

The petitioner filed this petition for a writ of habeas corpus in the United States Court for the Western District of Pennsylvania. The magistrate-judge, without granting an evidentiary hearing, submitted a report recommending denial of the writ because the petition did not state a cognizable federal constitutional claim. The district court adopted the report and recommendation of the magistrate-judge and denied the writ. We affirm.

## I.

The petitioner, Richard Wells, is currently serving a life sentence for a second degree murder conviction after he and three others robbed and killed an elderly woman. Wells was arrested on July 28, 1975, and his trial was scheduled to commence during the 1975 September Term. Wells' court-appointed counsel shortly thereafter applied for a change of venue on the grounds of prejudicial pretrial publicity. The court denied this motion.

On September 12, 1975, however, the court issued its own motion continuing the case until the February 1976 term of court, beyond the 180–day limit prescribed by Pennsylvania Rule of Criminal Procedure 1100 (Rule 1100). While awaiting trial, Wells was kept in custody in a state high security prison over 200 miles from the trial court.

In November, 1975, the district attorney, seeking to confirm the court's continuance, filed its own motion based on an anticipated shortage of veniremen from which to select a jury for Wells' highly-publicized murder trial, which, according to the trial judge, was the first one held in that county in twenty years. At a brief hearing before the court held in the absence of the defendant, counsel, without consulting with Wells, agreed to have the trial continued until February, 1976. Defense counsel's failure to object or obtain Wells' consent is the focal point of Wells' assignment of error.

Jury selection commenced March 1, 1976, or 217 days after Wells' arrest. Prior to the start of trial, on February 25, 1976, Wells filed with the court a *pro se* application to dismiss the charges against him under Rule 1100.[2] The court summarily denied this application on March 2, 1976.

A trial court judge, hearing Wells' speedy trial petition in 1981, examined the trial transcripts and other evidence in the record, heard argument from counsel, and subsequently entered an order for Wells' release based on the finding that his constitutional right to a speedy trial had been violated. After a Commonwealth appeal, the superior court remanded to the trial court for a determination on the whole trial record, 322 Pa.Super. 380, 469 A.2d 672, including those portions which had not been transcribed at the time of the original review.

On February 24, 1984, the trial court conducted a second hearing, made extensive factfindings, and again ruled in favor of Wells. This time, the superior court affirmed. 345 Pa.Super. 623, 496 A.2d 855. After the Commonwealth appealed, the Pennsylvania Supreme Court reversed. The supreme court stated that the proper resolution of Wells' constitutional claim required reference to the defense counsel's conduct prior to trial because, it declared, "if counsel's decision to agree to the contin-

**2.** That Rule at the time of Wells' trial provided, in relevant part, the following:

(a)(2) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed.

(f) At any time before trial, the defendant or his attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this Rule has been violated. A copy of such application shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon. Any order granting such application shall dismiss the charges with prejudice and discharge the defendant.

Subsequently, this Rule was amended and subsection (f) replaced with a substantially different provision.

uance constituted effective representation, then [Wells'] constitutional argument fails." The court found that because of the negative publicity surrounding the murder, the postponement of the trial date benefitted Wells. The court stated,

> Considering that the district attorney himself characterized the pretrial publicity as "lurid," we are not prepared to say that the trial counsel's agreement to a 37 day extension to the 1100 Rule was not a reasonable choice. Since the trial court has already foreclosed the possibility of a change of venue, a six month cooling off period was a reasonable alternative and was certainly in [Wells'] best interests.

On habeas review, the magistrate-judge adopted the undisputed factual findings of the state reviewing courts. The magistrate-judge likewise agreed with the Pennsylvania Supreme Court's legal analysis, concluding that, because the delay reasonably could have aided Wells, his counsel was not ineffective and his constitutional right was not breached.

## II.

■ Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights. We can take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee.

■ In this case, Pennsylvania's 180–day rule does not define the contours of the federal constitutional right to a speedy trial. *Cowgill v. Zimmerman*, 667 F.Supp. 1083 (E.D.Pa.1987) *aff'd* 845 F.2d 1010. Indeed, when defining that right, the United States Supreme Court eschewed the rigid limitations contained in state statutes and adopted a more fluid balancing test. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Court identified four factors to determine whether a trial delay infringes the Sixth Amendment right: the length of the delay, the validity of the reasons for the delay, whether the defendant affirmatively asserted his right, and

whether the defendant was prejudiced by the delay. *Id.* at 530–32, 92 S.Ct. at 2191–93.

■ Here, the petitioner's counsel agreed to the postponed trial date. The petitioner, however, argues that his counsel could not waive Wells' constitutional right to a speedy trial without his consent. Not all constitutional rights must be waived by the defendant personally; only those rights which are fundamental and inherently personal to a criminal defendant, such as the right to testify personally, "can be waived only by the defendant and not by his attorney." *U.S. v. Johnson*, 555 F.2d 115, 118 (3rd Cir.1977) *quoting Winters v. Cook*, 489 F.2d 174, 179 (5th Cir.1973); *see also, U.S. v. Teague*, 908 F.2d 752, 757 n. 4 (11th Cir.1990), *rehearing granted*, 932 F.2d 899, and cases cited therein. The court in *Teague* observed,

> [M]any of the tactical decisions made by defense attorneys throughout the course of their representation of the defendant "implicitly involve the waiver of constitutional rights" but do not require the defendant's personal consent. However, "[w]here an inherently personal right of fundamental importance is involved, the defendant's [personal] consent is required." Rights that have been found to be inherently personal and of fundamental importance such that only the defendant, not counsel, may waive them include the right to go to trial, the right to be tried by a jury, the right to be represented by counsel, and the right to appeal.

*Teague*, 908 F.2d at 758 (citations omitted).

We note also that the United States Supreme Court, observing that the right to a prompt trial has its roots in the Magna Carta and earlier ancient sources of law, held that this right "is as fundamental as any of the rights secured by the Sixth Amendment." *Klopfer v. North Carolina*, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967). However, because under the four *Barker* factors Wells' petition does not state facts which arise to a level of a deprivation of the constitutional right

to a speedy trial, we do not need to decide whether this right is so fundamental and personal that it can be waived only with the defendant's personal consent.

■ Turning to the first *Barker* factor, the length of delay, the United States Supreme Court has observed that the "speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *U.S. v. Loud Hawk,* 474 U.S. 302, 311, 106 S.Ct. 648, 654, 88 L.Ed.2d 640 (1986), *quoting U.S. v. Mac-Donald,* 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982). The length of delay which is presumptively prejudicial and which triggers plenary inquiry into the circumstances surrounding the delay will vary with the particular features of each case. Longer delays can be tolerated, for example, when the crime is very serious or complex. *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192. In addition, the impairment of liberty resulting from pretrial incarceration is most serious and, thus, the gravity of the prejudice resulting from long delays before trial is considerably greater than when the defendant is not incarcerated. *See Government of Virgin Islands v. Burmingham,* 788 F.2d 933, 936–37 (3rd Cir. 1986) (absence of pretrial incarceration or other prejudice controlled denial of defendant's speedy trial claim); *accord, Government of Virgin Islands v. Pemberton,* 813 F.2d 626, 628 (3rd Cir.1987).

■ For the crime of homicide, however, a pretrial incarceration of just over seven months, though long, is not intolerably so. Under evolving standards of fair process in our system of criminal justice, many courts have determined that a pretrial detention of comparable length, while undoubtedly prejudicial to the defendant's liberty, does not weigh heavily in favor of finding a denial of the defendant's right to a speedy trial.[3] Our system must be deliberate to be just; such deliberateness often requires a considerable expenditure of time prior to trial. A pretrial incarceration of seven months, although harmful from the perspective of the accused, does not by itself compel a finding that the petitioner was deprived of his right to a speedy trial.

Furthermore, the seriousness of a deprivation of liberty due to pretrial incarceration will vary with the conditions of the defendant's confinement.[4] Indeed, the Court held that the speedy trial guarantee was intended to prevent *"oppressive* pretrial incarceration." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193 (emphasis added). All pretrial detention is not equally oppressive or precisely definable. Courts in the past have tolerated the deprivation of an accused's liberty prior to trial for periods longer than seven months under conditions of incarceration prevailing in those cases. However, were the oppressiveness of such conditions to worsen or the treatment of the accused to fall below established, standard levels, so as to place the physical or mental integrity of the accused in jeopardy for example, the length of pretrial delay which a just system in a civilized society could tolerate would have to be reconsidered.

■ Indeed, the United States Supreme Court's rejection of rigid time limitations

---

**3.** In the following cases, the courts found that a pretrial incarceration of comparable or greater length than seven months did not violate the speedy trial guarantee: *U.S. v. Anderson,* 902 F.2d 1105, 1110 (2nd Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 182, 112 L.Ed.2d 146 (1990) (8 month delay); *Ringstaff v. Howard,* 885 F.2d 1542, 1545 (11th Cir.1989) (en banc), *cert. denied,* — U.S. ——, 110 S.Ct. 2622, 110 L.Ed.2d 643 (1990) (23 months, 7 months of unexplained delay); *U.S. v. Vachon,* 869 F.2d 653, 657 (1st Cir.1989) (13 months); *U.S. v. Thirton,* 813 F.2d 146, 154 (8th Cir.1987) (208 days). *But see, Redd v. Sowders,* 809 F.2d 1266, 1272 (6th Cir.

1987) (finding speedy trial violation in part because 10–month pretrial incarceration on robbery charge was oppressive and prejudicial). The period of delay that can be tolerated necessarily turns upon the facts of the particular case. *U.S. v. $8,850,* 461 U.S. 555, 565, 103 S.Ct. 2005, 2012, 76 L.Ed.2d 143 (1983).

**4.** *See Ringstaff v. Howard,* 885 F.2d 1542, 1548 (11th Cir.1989) (en banc), *cert. denied,* — U.S. ——, 110 S.Ct. 2622, 110 L.Ed.2d 643 (1990) (Johnson, J., dissenting).

on the speedy trial right compels a flexible analysis attuned to the nature and circumstances of the deprivation of an accused's liberty prior to trial. Here, however, Wells has not demonstrated that the conditions of his pretrial incarceration were extraordinary or fell below standard levels. Thus, although long enough to require plenary inquiry into the remaining *Barker* factors, the petitioners' pretrial incarceration of 217 days is not compelling.

Considering the second *Barker* factor, the reason for the delay, there is no evidence that the Commonwealth made a "deliberate attempt to delay the trial in order to hamper the defense," *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192, nor evidence of any improper motive in the Government's request for a continuance of Wells' trial. To the contrary, the record establishes that the district attorney sought the added time to replenish the jury pool because the crime had received much local attention and it was anticipated that obtaining an impartial jury would be difficult. This reason for delay is neither improper nor unreasonable. Indeed, in agreeing to the continuance, Wells' counsel apparently perceived no impropriety in the request nor any detriment to Wells' defense from the delay.

The third *Barker* factor looks to the defendant's responsibility to assert his speedy trial right. As the Court noted, "[t]he more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–32, 92 S.Ct. at 2192–93. Here, Wells asserted his right to a speedy trial in a pro se motion to the trial judge a few days before his trial commenced. Thus, although Wells did not unduly delay in asserting his speedy trial right, we believe that this factor is more than counterbalanced by the other factors which strongly militate against his claim.

█ Also, an initial two-week delay here occurred in part due to Wells' counsel's motion for a change in venue, which the court denied. When the reason for the

delay originates with the defendant or his counsel, such delay will not be considered for purposes of determining whether the defendant's right to a speedy trial has been infringed. *Ringstaff v. Howard*, 885 F.2d 1542, 1543 (11th Cir.1989) (en banc), *cert. denied*, ── U.S. ──, 110 S.Ct. 2622, 110 L.Ed.2d 643 (1990) (seven months of pretrial delay due to the defendant's request for a psychiatric evaluation not considered when determining speedy trial claim).

The fourth and most critical *Barker* factor, the prejudice to the defendant from the delay, also does not favor Wells' constitutional claim. The Court identified three types of prejudice resulting from a prolonged trial date: oppressive pretrial incarceration, anxiety and concern of the accused, and possible impairment of the defense. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. Only the last type of prejudice poses the threat of affecting the fairness and reliability of the defendant's trial; all three, however, are protected by the speedy trial guarantee. *See U.S. v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971) ("[T]he major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense.") This record contains evidence of only the first type of prejudice, seven months of pretrial incarceration, which, as noted above, under prevailing Sixth Amendment speedy trial jurisprudence is not compelling.

The Pennsylvania Supreme Court, however, also found that extending the date for commencement of the trial actually benefitted Wells by allowing the abatement of negative publicity surrounding the crime, and it relied upon this finding when denying Wells' constitutional claim. We do not accept this reasoning of the supreme court which the magistrate-judge here adopted on habeas review.

The only possible rationale for this conclusion is that the supreme court found that adverse publicity surrounding the crime compromised the fairness of Wells' trial by creating an impermissible bias within the jury; the passage of time, thus, purportedly allowed the bias to subside and

afforded Wells the "benefit" of an impartial jury. This logic, however, offends the Constitution, which requires the Commonwealth to provide a defendant with both a fair trial *and* a speedy trial. If courts could consider the supreme court's rationale, an accused could be forced to forgo his right to a speedy trial in favor of a fair one.

■ To the contrary, if negative publicity affects the ability of a state court to provide a defendant with a fair trial, the appropriate remedy is to change the venue of the trial, as Wells requested here; imprisoning the defendant until the attention abates hardly constitutes a fair alternative. Courts cannot justify denying a defendant's right to a speedy trial on the grounds that an earlier and timely trial would have been tainted by adverse publicity. Such a post hoc justification for extending the pretrial incarceration of an accused undoubtedly would be available in every high-profile criminal prosecution. We refuse to accept for the important purposes of a speedy trial determination that an accused may benefit from the dissipation of prejudice caused by the pretrial publicity of a crime, when adequate alternatives exist to remove that prejudice which will not compromise a defendant's Sixth Amendment rights.

We, thus, will not consider the Pennsylvania Supreme Court's conclusion that the diminution of adverse publicity by the delay benefitted the accused, and thus weighed against a finding of prejudice to Wells on his constitutional speedy trial claim. Nevertheless, the evidence of prejudice to Wells from his pretrial incarceration is too slight to constitute an unconstitutional denial of his right to a speedy trial, especially when considered together with the other *Barker* factors, which, with the exception of the third factor, do not support Wells' claim.

### III.

■ Wells also alleges that defense counsel's acquiescence in the Commonwealth's motion for a continuance deprived Wells of his Sixth Amendment right to effective assistance of counsel. Wells, who is being represented in this appeal by a federal public defender, also strenuously argues that an evidentiary hearing is required to resolve the factual issues underlying this claim.

The Sixth Amendment right to counsel "is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 1449, n. 14, 25 L.Ed.2d 763 (1970). The United States Supreme Court has declared that, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). Proof of an ineffective assistance of counsel claim requires, first, that the attorney's performance was deficient and, second, that the errors prejudiced the defense; that is, they "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064.

Assuming that trial counsel erred by agreeing to a continuance of the trial without first seeking his client's consent, only in the rarest of situations could such an error produce an unreliable trial result. Absent some allegation of prejudice to the defense—for example, the destruction of exculpatory physical evidence or the loss of a key defense witness during the period of delay—such a claim is facially untenable. In his petition and in his brief on appeal, Wells has pointed to no evidence of such prejudice. Indeed, in his two postconviction evidentiary hearings in state court, there was not even the barest suggestion of any defense-impairing prejudice resulting from this delay.

■ When a district court has denied a petition for a writ of habeas corpus without an evidentiary hearing, we must remand for a hearing only if "the petitioner has alleged facts that, if proved, would entitle him to relief." *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 291 (3rd Cir.1991),

*petition for cert. filed* (June 18, 1991). Thus, to merit a hearing, a claim for ineffective assistance of counsel, accepting the veracity of its allegations, must satisfy both prongs of the *Strickland* test, deficient counsel and prejudice to the defense. *U.S. v. Dawson*, 857 F.2d 923, 928 (3rd Cir.1988). Here, Wells' allegation of ineffective assistance of counsel is impaled on the second prong of the Court's analysis in *Strickland*.[5]

### IV.

In sum, Wells' incarceration for 217 days prior to trial did not infringe his federal constitutional right to a speedy trial. Likewise, his counsel's acquiescence in the delay did not deny Wells effective assistance of counsel.

Accordingly, we conclude the district court properly declined to grant the petition for a writ of habeas corpus. The judgment of the district court will be affirmed.

**5.** Although Wells does not argue that his speedy trial claim requires an evidentiary hearing in the district court, we conclude that a hearing on that claim likewise is unnecessary because the factual issues underlying each of the four factors in the *Barker* analysis were fully and fairly litigated in the state court evidentiary hearings. See 28 U.S.C. § 2254(d), which provides that in a habeas corpus proceeding federal courts must presume the correctness of factual findings made in state court after a "full and fair hearing." Here, the legal conclusion drawn by the original reviewing trial court differed from the Pennsylvania Supreme Court's conclusion; petitioner does not contend, however, that the factual findings contained in the record and relied upon by each of the state courts were inaccurate or incomplete.