.UNITED STATES of America

v.

Shihee Donveil HATCHETT.

Criminal Action No. 08–256–1.
Civil Action No. 12–1100.

United States District Court,
E.D. Pennsylvania.

Dec. 9, 2013.

Shihee Donveil Hatchett, pro se.

### *MEMORANDUM*

ANITA B. BRODY, District Judge.

Currently before me is Shihee Donveil Hatchett's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. For the reasons set forth below, I will deny Hatchett's § 2255 motion.

## I. BACKGROUND

On July 26, 2007, just before 2:00 a.m., three police officers went to the Silver Saddle Bar in Philadelphia in response to a radio call. The officers were familiar with the Silver Saddle Bar because it was a nuisance bar known for fights and shootings. Additionally, the neighborhood the bar was located in was a high-crime area known for drugs, shootings, assaults, and gun robberies. When the officers arrived at the Silver Saddle Bar, they had a conversation with a bar employee. Based on that conversation, the officers had a heightened concern for their safety.

Upon entering the bar, the officers encountered Hatchett. As one of the officers approached Hatchett, the officer ordered Hatchett to place his hands on an iron railing that ran along the bar. Hatchett repeatedly refused to place his hands on the railing and began walking toward the exit of the bar. The officer then grabbed Hatchett's arm, and a violent struggle ensued between Hatchett and the three officers. During the struggle, the officers saw Hatchett reach for a large bulge in his front pocket that they believed to be a

gun. Ultimately, the officers succeeded in handcuffing Hatchett, at which point they located and removed a gun from his front pocket. As the officers were escorting Hatchett out of the bar, he broke free and attempted to flee while handcuffed. The officers tackled Hatchett to the ground, causing injuries to Hatchett's face. The officers recovered several packets of alleged crack cocaine when they searched Hatchett after his arrest.

Following the arrest, the police transported Hatchett to Mercy Hospital. When Hatchett arrived at the hospital, he was unconscious, had a depressed gag reflex, and needed to be placed on a ventilator. Additionally, test results revealed that Hatchett had a fracture to the bone of his eye socket.

On June 3, 2009, after receiving the above evidence, a jury convicted Hatchett of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Hatchett was sentenced to 120 months of imprisonment, three years of supervised release, a $500 fine, and a $100 special assessment.

Hatchett appealed his conviction to the Third Circuit. The sole issue he raised in his appeal was the constitutionality of 18 U.S.C. 922(g)(1). On September 10, 2010, the Third Circuit affirmed Hatchett's conviction. Hatchett filed a petition for writ of certiorari with the Supreme Court of the United States, which was denied on February 22, 2011.

## II. STANDARD OF REVIEW

Section 2255 empowers a court to "vacate, set aside or correct" a sentence that "was imposed in violation of the Constitution or laws of the United States." 28

U.S.C. § 2255(a). If a party is entitled to relief under § 2255(a), "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* § 2255(b). A petitioner is entitled to an evidentiary hearing unless the motion, files, and records of the case show conclusively that the petitioner is not entitled to relief.[1] *Id.*

## III. DISCUSSION

Hatchett contends that he is entitled to relief because trial and appellate counsel rendered ineffective assistance of counsel.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established the legal framework for determining Sixth Amendment claims of ineffective assistance of counsel. *Strickland* sets forth a two-part test for claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. "Under *Strickland*'s first prong, a court must determine whether, in light of all the circumstances, the identified acts or omissions of counsel were outside the range of professionally competent assistance."

---

1. Hatchett is not entitled to an evidentiary hearing because the record conclusively establishes that his claims are not meritorious.

*Grant v. Lockett,* 709 F.3d 224, 234 (3d Cir.2013). A court's evaluation of an attorney's performance must be "highly deferential." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). The second prong of *Strickland,* prejudice, requires a petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

Hatchett raises eight separate claims of ineffective assistance of counsel. Accordingly, I address each claim individually.

## A. Failure to File a Pre–Trial Motion to Suppress the Gun

Hatchett claims that his trial counsel was ineffective for failing to file a pre-trial motion to suppress the gun on the ground that it was seized unlawfully in violation of the Fourth Amendment. Specifically, Hatchett argues that the police officers lacked reasonable suspicion to stop and search him.

Under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and subsequent cases, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Id.* A court must consider the totality of the circumstances when determining whether an officer had reasonable suspicion to conduct an investigatory stop. *United States v. Gatlin,* 613 F.3d 374, 378 (3d Cir.2010). A reasonable suspicion may result from one or several of the following factors:

> specialized knowledge and investigative inferences ..., personal observation of suspicious behavior ..., information from sources that have proven to be reliable, and information from sources that—while unknown to the police— prove by the accuracy and intimacy of the information provided to be reliable at least as to the details contained within that tip .... "

*United States v. Nelson,* 284 F.3d 472, 478 (3d Cir.2002).

██ Hatchett argues that the evidence presented at trial was insufficient to establish reasonable suspicion; however, there was additional evidence provided to defense counsel prior to trial that demonstrates, along with the trial evidence, that the officers had reasonable suspicion to stop and frisk Hatchett. The officers went to the Silver Saddle Bar in response to an anonymous tip that there was a black man wearing all black in the bar who possessed a gun. The call required the officers to go to a known nuisance bar, right before closing at 2 a.m., in a high-crime area of Philadelphia. When the officers arrived at the bar, an employee of the bar told the

officers during a face-to-face interaction that a black man wearing all black had a gun inside the bar. Upon entering the bar, the officers noticed that Hatchett was the only black male wearing all black inside the bar.[2] When the officers approached Hatchett, he refused to put his hands on the railing, and attempted to leave the bar. After Hatchett refused to comply with the officers' commands, an officer seized him.

In *United States v. Valentine*, at 1 a.m. in a high-crime area, police officers received a face-to-face tip from an informant who refused to identify himself, informing them that he had just seen a man with a gun, and describing the man's appearance. 232 F.3d 350, 352 (3d Cir.2000). As the officers approached the defendant who matched the informant's description, the defendant reacted by walking away. *Id.* at 353. In deciding whether the officers had reasonable suspicion to conduct the stop, the Third Circuit first addressed whether the tip the officers received was reliable. The Third Circuit concluded that the tip was reliable because "the informant was exposed to retaliation from Valentine and knew the officers could quickly confirm or disconfirm the tip; and the officers could assess the informant's credibility as he spoke, knew what the informant looked like, and had some opportunity to find the informant if the tip did not pan out." *Id.* at 355. Given the totality of the circumstances, the Third Circuit held that the police officers had reasonable suspicion to conduct a *Terry* stop of the defendant because the stop was based on a reliable tip that the defendant was carrying a gun at 1 a.m. in a high-crime area known for shootings, and the defendant immediately began walking away when the officers approached him in their patrol car. *Id.* at 355–57. In reaching this conclusion, the Third Circuit explained:

> The constellation of likely criminal acts in a high-crime area at 1:00 a.m. goes well beyond simply carrying a gun without registration or with altered serial numbers. Indeed, given the large number of potential crimes and the danger posed by an armed criminal, we think that if the police officers had done nothing and continued on their way after receiving the informant's tip, the officers would have been remiss. People who live in communities torn by gunfire and violence are entitled to be free from fear of victimization and have police investigate before shootings occur.

*Id.* at 356.

As in *Valentine*, the tip the officers received was reliable because it occurred face-to-face and allowed them to assess the credibility of the informant, the informant could be held accountable for the information he conveyed because he identified himself as a bar employee, the informant exposed himself to a risk of retaliation from Hatchett by remaining at the bar to deliver the tip, and the information he provided was recently observed. *See also United States v. Brown*, 448 F.3d 239, 249–50 (3d Cir.2006) (listing specific aspects of tips that indicate reliability). Additionally, the tip was received at 2 a.m. at a nuisance bar known for fights and shootings that was located in a high-crime area. Lastly, when the police officers approached Hatchett, he attempted to exit the bar. Based on the totality of the circumstances, the police officers had reasonable suspicion to conduct an investigatory stop and owed a duty to the community to investigate. Hatchett was not prejudiced by his de-

---

**2.** Hatchett asserts that there were two men in the bar wearing all black. The trial transcript establishes that there was another man in the bar wearing a black shirt and blue jeans, but that only Hatchett was wearing all black.

fense attorney's failure to file a motion to suppress the gun because it is highly unlikely that the motion would have been granted. Thus, there is no reasonable probability that the outcome would have been different if counsel had filed a motion to suppress. Therefore, I will deny Hatchett's ineffective assistance of counsel claim on this basis.

## B. Failure to Move for Dismissal Based on Speedy Trial Violations

Hatchett contends that his statutory and constitutional rights to a speedy trial were violated. Hatchett alleges that trial counsel was ineffective for failing to seek dismissal of the indictment based on these speedy trial violations.

### 1. The Government's Violation of the Speedy Trial Act—Failure to File an Information or Indictment Within Thirty Days of Hatchett's Arrest

■ Hatchett first alleges that the Government violated the Speedy Trial Act by waiting more than thirty days after his arrest to file an information or indictment. The Speedy Trial Act provides: "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). However, "[w]hen an arrest on state charges is followed by a federal indictment, the right to a speedy trial in the federal case is triggered by the federal indictment, and the time period under consideration commences on that date." *United States v. Battis*, 589 F.3d 673, 679

(3d Cir.2009). Thus, "an arrest on state charges does not engage the speedy trial protection for a subsequent federal charge." *Id.* (internal quotation marks omitted).

■ On July 26, 2007, Hatchett was arrested on state charges. The state charges triggered a violation of Hatchett's parole for another state conviction, which led the state authorities, on August 13, 2007, to detain Hatchett pending disposition of his parole violation. On September 26, 2007, the state charges related to Hatchett's arrest on July 26, 2007 were dismissed for lack of prosecution. However, from August 13, 2007 until November 3, 2009, Hatchett remained in state custody on his parole violation.[3] On January 9, 2008, after a parole violation hearing, the state recommitted Hatchett to serve six months for the parole violation. On May 6, 2008, while Hatchett was still serving this state sentence, the federal grand jury indicted him for the events that took place on July 26, 2007.

Hatchett argues that even though he remained in state custody until his indictment on May 6, 2008, the thirty-day speedy trial clock should have begun on September 26, 2007 when the state charges were dismissed against him. Although Hatchett was detained by the state after September 26, 2007, he argues that his detention was at the behest of the federal government and really was the result of federal action. In *United States v. Woolfolk*, the Fourth Circuit held that the Speedy Trial Act would be triggered "when the Government has knowledge that an individual is held by state authorities solely to answer to federal charges." 399 F.3d 590, 596 (4th Cir.2005). Relying on

---

**3.** Paragraph 39 of the Presentence Investigation Report indicates that Hatchett remained in state custody on a parole violation from August 13, 2007 until November 3, 2009. At

sentencing, Hatchett's attorney confirmed that Hatchett was held in state custody for a parole violation during this time period. N.T. 2/17/10 at 22:13–23:5.

*Woolfolk,* Hatchett argues that the Speedy Trial Act was triggered prior to his indictment because he was held by state authorities solely to answer to federal charges. The record directly controverts this contention because at the time Hatchett was federally indicted, he was still serving a state sentence for his parole violation. Thus, he was not being held by the state solely to answer to federal charges. Hatchett's right to a speedy trial did not begin until his federal indictment. Therefore, the Government did not violate the Speedy Trial Act by waiting more than thirty days to indict him after his arrest on state charges. Because no violation of the Speedy Trial Act occurred counsel was not ineffective for failing to move to dismiss the indictment on this basis.

### 2. The Government's Violation of the Speedy Trial Act—More than Seventy–Day Delay in Bringing the Case to Trial

Hatchett also alleges that the Government violated the Speedy Trial Act by delaying more than seventy non-excludable days before trial. The Speedy Trial Act provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). However, certain "periods of delay shall be excluded … in computing the time within which the trial of any such offense must commence." *Id.* at § 3161(h). Excludable days include:

> Any period of delay resulting from a continuance granted by any judge on his

own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A).

On May 29, 2008, Hatchett had an initial appearance before Magistrate Judge Lynne A. Sitarski. His seventy-day limit began to accrue the day after his initial appearance. Hatchett's trial was originally set for July 7, 2008. However, on June 13, 2008, I granted a joint motion for a continuance based on my finding that the ends of justice were best served in granting a continuance, and outweighed the best interest of the public and the defendant in a speedy trial "because defense counsel needs adequate time to review the discovery, investigate the case, and meet with his client … to discuss the case and a possible non-trial disposition." *See* ECF No. 16. The time between the date of the order and the new date set for trial were to be excluded in computing the seventy-day limit. Thus, there were only fourteen non-excludable days between Hatchett's initial appearance on May 29, 2008, and the continuance on June 13, 2008. A new trial date was set for March 23, 2009.

At a pretrial conference held on March 16, 2009, only one week before trial, de-

fense counsel, for the first time, informed the prosecutor that he planned on using an expert at trial. The prosecutor responded that she might need to postpone the trial to find an expert for the prosecution. Defense counsel acknowledged that if a continuation was necessary, "It's my fault." Transcript March 16, 2009 at 11:12–12:1. On March 20, 2009, following the pretrial conference, the Government filed an unopposed motion for a continuance. I found that the ends of justice were best served by granting the unopposed continuance "because the government needs adequate time to review defense expert reports, and hire a government expert." *See* ECF No. 33. The time between the date of the order and the new date set for trial were to be excluded in computing the seventy-day limit. A new trial date was set for June 1, 2009, which is the day the trial began.

Hatchett argues that the ends of justice continuances were not properly supported on the record by the Court and therefore, the time is not excludable. However, the orders granting both continuances clearly provided justification for the continuances. Moreover, the motions for the continuances themselves further set forth the reasons for granting the continuances. *See United States v. Lattany*, 982 F.2d 866, 879 (3d Cir.1992) ("Although the district court may not merely incorporate by reference the reasons set out in the statute, it is not necessary for it to articulate facts which are obvious and are set forth in the motion for continuance itself."). Lastly, both parties jointly requested the first continuance and defense counsel did not oppose the second continuance. "Defendants cannot be wholly free to abuse the system

by requesting [ends of justice] continuances and then argue that their convictions should be vacated because the continuances they acquiesced in were granted." *Id.* at 883. Both continuances were properly granted and the delay resulting from these continuances was excludable.

Thus, when the trial began on June 1, 2009, the Government was well within the seventy-day limit proscribed by the Speedy Trial Act.[4] Therefore, the Government did not violate the Speedy Trial Act by delaying trial by more than seventy non-excludable days. Counsel was not ineffective for failing to move to dismiss the indictment on this basis because no violation of the Speedy Trial Act occurred.

### 3. Violation of Hatchett's Sixth Amendment Right to a Speedy Trial

■ Hatchett alleges that his Sixth Amendment right to a speedy trial was violated. The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. In determining whether a defendant's speedy trial rights have been violated, a court must consider the *Barker* factors: (1) the length of the delay; (2) the reason for the delay; (3) the extent to which the defendant asserted his right to a speedy trial; and (4) the prejudice suffered by the defendant as a result of the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). "None of these factors is either a necessary or sufficient condition, and the factors must be considered together with such other circumstances as may be relevant." *Battis*, 589 F.3d at 678 (internal quotation marks omitted).

---

4. In addition to the ends of justice continuances, there were numerous government pretrial motions filed throughout the time period that also stopped the speedy trial clock. *See*

18 U.S.C. § 3161(h)(1)(D) (providing that delay resulting from any pretrial motion, from its filing through its disposition, is excluded from the seventy-day limit).

The first factor, the length of the delay, determines whether it is necessary to consider the remaining *Barker* factors. *Id.* In a case where the defendant was arrested on state charges, the length of the delay is measured from the date of federal indictment until the start of trial. *Id.* at 678–79. Thus, the period of delay in this case is the thirteen months between Hatchett's federal indictment on May 6, 2008, and the start of his trial on June 1, 2009. A thirteen month delay is lengthy enough to require inquiry into the other *Barker* factors. *See, e.g., Hakeem v. Beyer,* 990 F.2d 750, 760 (3d Cir.1993) (fourteen and one-half month delay triggers inquiry into remaining factors); *Wells v. Petsock,* 941 F.2d 253, 258 (3d Cir.1991) (seven month delay triggers inquiry into remaining factors).

The second *Barker* factor is the reason for the delay. "A deliberate effort by the Government to delay the trial in order to hamper the defense weighs heavily against the Government." *Battis,* 589 F.3d at 679 (internal quotation marks omitted). "By contrast, 'delay caused by the defense weighs against the defendant,' including 'delay caused by the defendant's counsel.'" *Id.* at 679–80 (quoting *Vermont v. Brillon,* 556 U.S. 81, 90, 129 S.Ct. 1283, 173 L.Ed.2d 231 (2009)). "Because the attorney is the defendant's agent when acting, or failing to act, in furtherance of the litigation, delay caused by the defendant's counsel is also charged against the defendant." *Vermont,* 556 U.S. at 90–91, 129 S.Ct. 1283 (internal quotation marks omitted).

In this case, delays were largely the result of two ends of justice continuances. The first continuance was jointly requested by the parties and benefitted Hatchett because it enabled defense counsel to adequately review and investigate the case. While the Government requested the second continuance, it was unopposed by defense counsel. Moreover, defense counsel acknowledged, on the record, that it was his fault that the Government's continuance was necessary because he had waited until a week before trial to inform the Government that he intended to call an expert witness at trial. Given that defense counsel is largely responsible for both of these delays, this factor weighs heavily against Hatchett's speedy trial claim.

The third *Barker* factor requires the court to determine whether Hatchett asserted his right to a speedy trial. "[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker,* 407 U.S. at 532, 92 S.Ct. 2182. "[I]f a defendant is to tip the *Barker* scales significantly in his favor on the factor of assertion of the right, ... in cases where the accused is represented by counsel, some formal motion should be made to the trial court or some notice given to the prosecution." *Hakeem,* 990 F.2d at 765. "By contrast, informal correspondence to the court by a represented defendant is less convincing." *Battis,* 589 F.3d at 681 (internal quotation marks omitted). "Moreover, when a defendant requests a speedy trial, but through contrary actions ... evidences an unwillingness to commence with the trial requested, the request carries minimal weight." *Id.* (internal quotation marks omitted).

Hatchett asserted his right to a speedy trial in a pro se letter received by the Court on March 26, 2009. In the letter, Hatchett requested appointment of new counsel because he did not believe current counsel was working in his "best interest." App. A. Additionally, Hatchett informed the Court that he had "repeatedly requested to [his attorney] that I wanted a Speedy Trial and that I do not wish to waive any rights I'm entitled to ...." *Id.*

During a pretrial hearing on April 7, 2009, Hatchett again expressed displeasure

at the amount of time he had been waiting for trial. Specifically, he asked, "Does this work ... this delay. I've been waiting since last year." N.T. 4/7/09 at 14:21–23. I informed Hatchett that there would be "[n]o more delay," and that a trial date would be set. *Id.* at 14–16. Additionally, I denied Hatchett's request for appointment of new counsel.[5]

Hatchett twice asserted his right to a speedy trial, informally in a letter and during a pretrial hearing. The request for a speedy trial was accompanied by a request for new counsel, which evidences Hatchett's unwillingness to begin trial at the time he asserted his right. However, Hatchett did put the prosecution on notice that he was displeased with the amount of time it was taking to bring his case to trial. Therefore, the third *Barker* factor weighs in Hatchett's favor.

The final *Barker* factor is whether the delay prejudiced the defendant. There are three types of prejudice that can result from a delayed trial: "oppressive pretrial incarceration, anxiety and concern of the accused, and possible impairment of the defense." *Wells,* 941 F.2d at 258. A delay of thirteen months is too short to infer prejudice absent additional proof. *See Hakeem,* 990 F.2d at 764 ("[T]he fourteen and one-half months that passed between arrest and trial is insufficient to allow an inference of prejudice solely from the length of the delay. Its magnitude is too small to itself increase the factor of prejudice to a quantity that will perceptively weigh the balance we must make in Hakeem's favor.") Hatchett has failed to demonstrate how the delay caused him prejudice. Therefore, the fourth *Barker* factor weighs against Hatchett's speedy trial claim.

When considered together, the *Barker* factors indicate that the thirteen month delay did not violate Hatchett's right to a speedy trial. Counsel was not ineffective for failing to move to dismiss the indictment on this basis because no constitutional speedy trial violation occurred.

**C. Failure to Investigate and Prepare for Trial in a Timely Manner**

■ Hatchett alleges that trial counsel was ineffective because he did not investigate and prepare for trial in a timely manner. Hatchett argues that counsel performed deficiently because he didn't interview hospital staff until less than ten days before trial was scheduled to begin on March 23, 2009. Even if this is correct, Hatchett cannot demonstrate any prejudice because the trial was continued until June 1, 2009, which gave defense counsel additional time to sufficiently investigate and prepare. Additionally, Hatchett alleges that counsel's delayed investigating made it impossible to locate employees and witnesses of the Silver Saddle Bar because the bar went out of business before trial. However, the Silver Saddle Bar closed in December 2007, five months before Hatchett was indicted, and before counsel was appointed. Moreover, Hatchett has not explained how the testimony of any of these witnesses would have been helpful to his defense. Hatchett cannot succeed on this ineffective assistance of counsel claim because has not demonstrated that he was prejudiced by counsel's delayed investigation.

**D. Failure to Investigate, Discover, and Present Witness Testimony**

■ Hatchett next contends that defense counsel did not present sufficient

---

5. At the hearing, I told Hatchett that his letter would be filed as a motion for appointment of new counsel, and that I was denying his motion. Inadvertently, the letter was never filed on ECF. Therefore, it is attached to this Memorandum as Appendix A.

witness testimony. During trial, defense counsel called Dr. Sanjay Dabral, one of the attending physicians responsible for Hatchett's treatment while he was in Mercy Hospital after his arrest. The purpose of calling Dr. Dabral was to introduce evidence that the condition Hatchett arrived in at the hospital was not consistent with the police officers' testimony as to the causes of Hatchett's injuries and, thus erode the police officers' credibility. At trial, Dr. Dabral testified that when Hatchett arrived at the hospital, he was unconscious, had a depressed gag reflex, and needed to be placed on a ventilator. Additionally, Dabral testified that Hatchett had a fracture to the bone of his eye socket. Hatchett argues that defense counsel should have called an emergency room physician to testify about the extent of his injuries rather than Dr. Dabral because an emergency room physician would have been a more effective witness. Defense counsel made a strategic decision to call Dr. Dabral to testify about Hatchett's injuries, and Dr. Dabral competently provided extensive testimony regarding Hatchett's condition upon admission into the hospital. Defense counsel made a professionally reasonable decision to use Dr. Dabral as a witness rather than an emergency room physician. Moreover, even if additional hospital staff had testified, there is no indication presented by Hatchett that the testimony would have varied from that of Dr. Dabral. Thus, there is no reasonable probability that the outcome of the trial would have been different. Therefore, I will deny Hatchett's ineffective assistance of counsel claim on this. basis.

### E. Failure to Object to the Admission of Uncharged Crimes

█ Hatchett further alleges that he received ineffective assistance of counsel when trial counsel failed to object to the admission of his uncharged crimes of possession of crack cocaine and attempted robbery of the Silver Saddle Bar. A review of the record reveals that evidence of the attempted robbery was never admitted at trial, and that counsel made a strategic decision to introduce the crack cocaine. Defense counsel used the cocaine evidence to support his theory that Hatchett ran from the police because he had the cocaine in his pocket, and the police later planted the gun on Hatchett to justify their use of force. This strategy was presented to the jury by defense counsel in his closing:

> I suggest to you, ladies and gentleman, that there would be plenty of reason to run from the police if they're trying to stop you if you have cocaine in your pocket, and you try and run from the police. And the police, I would suggest to you, if they—you start running, so they—they go and they try and stop you, and they—they wrestle with you. And—and they ultimately subdue you, punch you a couple of times. They ultimately subdue you and send you off to the hospital because you're bleeding a little bit. And then they find out that the person that walked on to the police wagon is in critical condition, unresponsive body. What might happen then? What might happen if a gun from a shooting scene had been recovered …? Ladies and gentlemen, beyond a reasonable doubt, you can't say where this gun came from.

N.T. 6/3/09 at 50:4–51:2. Under these circumstances, the decision not to object to the admission of the cocaine was sound trial strategy. I will deny Hatchett's ineffective assistance of counsel claim on this basis because counsel's performance was not deficient.

## F. Failure to Object to the Court's Handling of Jury Requests

Hatchett alleges that he received ineffective assistance of counsel when defense counsel failed to object to the court's denial of the jury's request to review the testimony of the three police officers. During deliberations, the jury requested to review the testimony of the three police officers. In response to the request, I informed the jurors that it would take over four hours to listen to the testimony again, and told them that they could listen to the testimony again if they insisted, otherwise their recollection would control. The jurors opted to continue deliberations without hearing the testimony again. Counsel could not object because I did not deny the jury's request. Thus, his performance was not deficient.

██ Hatchett also alleges that he received ineffective assistance of counsel when defense counsel failed to object to the court's grant of the jury's request to review the record of the 911 call. During deliberations, the jury requested the "Record of the 911 call—or the exact radio." N.T. 6/30/09 at 87:5–6. Defense counsel had introduced the record of the 911 call at trial to demonstrate that the timing of events supported his theory that the police had planted the gun on Hatchett. Defense counsel did not object to the jury's request for a record of the 911 call. However, he insisted that the jury receive a redacted copy of the record that only provided the timing of events. There was no reason for defense counsel to object to the redacted copy of the 911 call because it supported his defense theory. Thus, defense counsel's performance was not deficient. Moreover, even if defense counsel had objected to the jury's request for a record of the 911 call, there is no reasonable probability that the outcome of the trial would have been different. Therefore, I will deny Hatchett's ineffective assistance of counsel claim on this basis.

## G. Sentencing Failures

Hatchett argues that counsel was ineffective at sentencing for many different reasons.

### 1. Failure to Object to Two Level Increase Under U.S.S.G. § 3C1.1

██ Hatchett alleges that counsel was ineffective at sentencing for failing to object to a two level increase for Obstructing or Impeding the Administration of Justice pursuant to U.S.S.G. § 3C1.1. Hatchett, however, received a two level increase for Reckless Endangerment During Flight pursuant to U.S.S.G. § 3C1.2, and counsel did object to this increase. Hatchett properly received the two level increase because he "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. Thus, this claim is without merit.

### 2. Failure to Object to Improper Assignment of Criminal History Points for a Juvenile Offense

Hatchett alleges that counsel was ineffective at sentencing for failing to object to improper assignment of criminal history points for a juvenile offense. However, the record reflects that Hatchett did not receive any criminal history points for a juvenile offense. Thus, this claim is without merit.

### 3. Failure to Object to Improper Base Offense Level Under U.S.S.G. § 2K2.1(a)(2)

Hatchett alleges that counsel was ineffective at sentencing for failing to object to his receipt of a base offense level of 24 pursuant to U.S.S.G. § 2K2.1(a)(2). Section 2K2.1(a)(2) defines the base offense

level for an individual convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). A defendant receives a base offense level of 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2). Hatchett received felony convictions in 1994 and 2002 for possession with intent to distribute a controlled substance. Thus, he appropriately received a base offense level of 24 at sentencing. Counsel was not ineffective for failing to object to his receipt of a proper base offense level.

### 4. Failure to Object to Addition of Two Criminal History Points Under U.S.S.G. § 4A1.1(e)

Hatchett alleges that counsel was ineffective at sentencing for failing to object to the addition of two criminal history points under U.S.S.G. § 4A1.1(e) because § 4A1.1(e) was repealed effective November 1, 2010. Hatchett, however, only received one additional criminal history point pursuant to § 4A1.1(e). Moreover, Hatchett properly received the additional criminal history point because he was sentenced on February 17, 2010, eight months before the repeal of § 4A1.1(e) of the guidelines. Thus, this claim is without merit.

### 5. Failure to Challenge the Constitutional Validity of Hatchett's Prior State Convictions

 Hatchett alleges that counsel was ineffective at sentencing for failing to challenge the constitutional validity of his prior state convictions before proceeding with his federal sentencing. As a general rule, an individual may not collaterally attack his federal sentence based on the ground that his prior state convictions were uncon-

stitutionally obtained, nor may he do so through a motion under 28 U.S.C. § 2255. *Drakes v. I.N.S.*, 330 F.3d 600, 603 (3d Cir.2003). Hatchett does not explain why he believes his prior state convictions are unconstitutional nor does he explain why the general prohibition on raising this claim is inapplicable to his case. Counsel did not perform deficiently because he had no legitimate basis to raise this argument. Moreover, his failure to raise a meritless argument did not prejudice Hatchett. Therefore, I will deny Hatchett's ineffective assistance of counsel claim on this basis.

### 6. Failure to Object to the Court's Misapplication of the Guidelines Range

Hatchett alleges that counsel was ineffective at sentencing for failing to object to the court's misapplication of the guidelines range. However, the court properly applied the guidelines range. Thus, this claim is without merit.

### 7. Failure to Argue for a Downward Departure Based on Diminished Capacity

Hatchett alleges that counsel was ineffective at sentencing for failing to argue for a downward departure based on his diminished capacity. Hatchett alleges no facts to support that he has a diminished capacity. Thus, there is no reasonable probability that the outcome would have been different, and Hatchett would have received a departure due to his diminished capacity, if counsel had raised the issue. Moreover, counsel's failure to raise this argument does not constitute deficient performance. Therefore, I will deny Hatchett's ineffective assistance of counsel claim on this basis.

### 8. Failure to Argue for a Downward Departure Based on Prosecutorial Delay

Hatchett alleges that counsel was ineffective at sentencing for failing to argue for a downward departure based on prosecutorial delay. Hatchett, however, alleges no facts to support that the prosecution was responsible for the delay in bringing his case to trial. Rather, as discussed previously, defense counsel bears a substantial responsibility for the delay. There is no reasonable probability that the outcome would have been different if counsel had raised this issue because no prosecutorial delay occurred. Moreover, counsel's failure to raise this argument does not constitute deficient performance. Therefore, I will deny Hatchett's ineffective assistance of counsel claim on this basis.

### 9. Failure to Argue that the Time Hatchett Served in State Court Should Have Been Credited Toward his Federal Sentence Pursuant to U.S.S.G. § 5G1.3

Hatchett alleges that counsel was ineffective at sentencing for failing to argue that the time he served for his parole violation in state court should have been credited toward his federal sentence pursuant to U.S.S.G. § 5G1.3. On July 26, 2007, Hatchett was arrested on state charges. The state charges triggered a violation of Hatchett's parole for another state conviction. On August 13, 2007, Hatchett began serving his state parole violation. Hatchett completed serving his sentence for the state parole violation on November 3, 2009. Hatchett did not receive credit on his federal sentence for the time he spent serving his state parole violation from August 13, 2007 until November 3, 2009. Hatchett believes counsel was deficient for failing to argue that he should

receive credit for this time served. Despite Hatchett's contention, defense counsel argued that Hatchett should receive credit for this time served. However, the court rejected counsel's argument because § 5G1.3 is inapplicable.

Section 5G1.3 provides: "In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(c). Hatchett's reliance on § 5G1.3 is mistaken because § 5G1.3 only applies to an undischarged term of imprisonment. U.S.S.G. § 5G1.3; see United States v. Reeves, 226 Fed.Appx. 234, 236 (3d Cir. 2007) ("Section 5G1.3(c) refers only to undischarged terms of imprisonment.").

Hatchett completed his sentence for his parole violation on November 3, 2009, well before he was federally sentenced on February 18, 2010. Thus, the court lacked discretion to give Hatchett credit on his federal sentence for the time served on his discharged state sentence. This claim is without merit because Hatchett is not entitled to credit pursuant to § 5G1.3. Therefore, I will deny Hatchett's ineffective assistance of counsel claim on this basis.

### H. Failure to Raise Additional Issues on Appeal

Lastly, Hatchett alleges that appellate counsel was ineffective for raising only one claim on appeal, the constitutionality of 18 U.S.C. § 922(g)(1). Hatchett argues that there were other meritorious claims that appellate counsel should have raised, including the Court's failure to give him credit for his time served on his state sentence pursuant to § 5G1.3. However, as discussed in all of the sections above, there were no claims that could have succeeded

that were not raised on appeal. Therefore, I will deny Hatchett's claim for ineffective assistance of counsel on this basis.

## IV. CONCLUSION

For the reasons set forth above, I will deny Hatchett's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. A certificate of appealability will not issue.[6]

### Appendix A

SHIHEE DONVEIL HATCHETT
# 63169–066

FEDERAL DETENTION CENTER

P.O. BOX 562

PHILADELPHIA, PA. 19105

Re: *U.S. v. Hatchett, No. 08–256*

Your Honor:

I am writing this letter to inform you that my attorney Mr. Mark Wilson is not working on my case in my best interest and I am respectfully requesting that he be removed from my case.

We have not and can not agree on a defensive strategy and he is constantly trying to talk me into giving up certain constitutional rights guaranteed to me by the United States Constitution.

I have repeatedly requested to Mr. Wilson that I wanted a Speedy Trial and that I do not wish to waive any rights I'm entitled to, however, Mr. Wilson has ignored my request as he has ignored my

request to file certain pre-trial *motions.* Mr. Wilson's actions are in violation of the Rules Of Professional Conduct and I have no confidence in his representation. Therefore, I am humbly requesting that the Court remove Mr. Mark Wilson from ray case and appoint me new counsel for the aforementioned reasons above. Thank you.

Sincerely,

/s/Shihee D. Hatchett
Shihee Donveil Hatchett

cc; file

### ORDER

**AND NOW,** this 9th day of December, 2013, it is **ORDERED** that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF Nos. 84, 88) is **DENIED.** A certificate of appealability will not issue.[7]

It is further **ORDERED** that the Government's Motion to Dismiss Petitioner's Habeas Corpus Motion Under 28 U.S.C. § 2255 (ECF No. 90) is **DENIED** as moot.

---

**6.** In the Third Circuit, a certificate of appealability is granted only if the petitioner makes: "(1) a credible showing that the district court's procedural ruling was incorrect; and (2) a substantial showing that the underlying habeas petition alleges a deprivation of constitutional rights." *Morris v. Horn,* 187 F.3d 333, 340 (3d Cir.1999). Hatchett has not made such a showing.

**7.** In the Third Circuit, a certificate of appealability is granted only if the petitioner makes: "(1) a credible showing that the district court's procedural ruling was incorrect; and (2) a substantial showing that the underlying habeas petition alleges a deprivation of constitutional rights." *Morris v. Horn,* 187 F.3d 333, 340 (3d Cir.1999). Hatchett has not made such a showing.